NEW-YORK,
Nov. 1808.

Hoyt
v.
Wildfire.

## Hoyt, survivor, &c. against Wildfire.

*A seaman was hired for a voyage from New-York to Bombay, & from thence to Canton, and back to New-York. The ship was laden with articles contraband of war, and while, in the course of the voyage to Bombay, the master, under a pretence of a want of water, which was not true, in fact, deviated, in order to put into the Isle of France, and while proceeding in the route to that island, and out of the track of the ostensible voyage, was captured by a British cruiser, and condemned. The seaman was put on board of the English frigate, and afterwards shipped to London, from whence he sailed to Wilmington, N. C. and from thence to New-York. In an action against the owner for wages, it was held, that he was entitled to his wages, according to the contract, from the time he shipped on board, until his arrival in New-York, deducting such wages as he had earned and received during his absence.*

*One seaman is a competent witness, in a suit brought by another seaman for wages, earned on board of the same ship, though he may have a common interest with the plaintiff, as to the point in controversy. The objection goes only to his credit.*

THIS cause came before the court upon a return to a *certiorari*, directed to the justices' court in the city of *New-York*.

*Wildfire* declared against *Hoyt*, in the court below, in an action of trespass on the case, for the non-payment of wages due to him, as a seaman on board the ship *Hampton*, (*Skillings*, master,) of which *Hoyt*, survivor of *Hoyt & Tom*, was owner. *Hoyt* pleaded *non-assumpsit*, and on the trial, before the justices, *Wildfire* produced two seamen as witnesses, who were on board the same ship, and had like demands for wages against *Hoyt*. They were objected to, as incompetent, on the ground of interest, but were admitted by the court. The plaintiff below then called on the defendant for his shipping articles, who refused to produce them, alleging as a reason, that the suit was against the owner, and not against the master, who was absent, and must be supposed to have the articles, and because he had not had reasonable notice to produce them.

The further hearing of the cause, was then postponed, from the 11th *August* to the 1st *September*, to give *Hoyt* an opportunity to produce the shipping articles. On that day the parties appeared, and *Hoyt* failing to produce the articles, *Wildfire* was allowed to give parol proof of their contents. He proved, that on the 9th *April*, 1806, he shipped on board the *Hampton*, as a seaman, by signing the usual shipping articles, on a voyage from *New-York* to *Bombay*, and from thence to *Canton*, and from *Canton* back again to *New-York*, at 18 dollars per month. The ship was loaded with pitch, tar, canvass, rigging, anchors, and other naval stores, being *contraband of war*. The

ship left the port of *New-York*, and after being out about four months, and while on her direct course to *Bombay*, she was ordered to put into the *Isle of France*, under pretence of being in want of water. After being 48 hours out of her course to *Bombay*, and in her deviated route to the *Isle of France*, and in sight of the port in that island, she was, on the 1st *August*, 1805, captured by an *English* frigate, and the vessel and cargo were, afterwards, condemned. When the *Hampton* altered her course, for the *Isle of France*, and at the time of her capture, she had plenty of water on board, and was in no distress. The captain, when he was proceeding to the *Isle of France*, charged the crew to say, in case the ship should be boarded by an *English* man of war, that they were putting in for want of water, when, in fact, there were several casks concealed in the hold. The plaintiff below was put on board the *English* frigate, and, after being detained for some time, he left her, and sailed for *London*, where he arrived on the 15th *April*, 1807. From *London* he came to *Wilmington*, and from thence to *New-York*, where he arrived about the 20th *August* following, after an absence of 16 months. From the time of his capture, until his return to *New-York*, he had been two months on wages, and had also received two months wages in advance, at the commencement of the voyage.

*Hoyt* proved, that it was customary for a vessel to clear out for one port, when she was, in fact, destined for another ; that this practice made no difference as to seamen's wages, nor was it customary to acquaint seamen with the concealed port of destination.

The court below decided, that the act of congress of 20th *July*, 1796, makes it obligatory upon the master of a ship, when he enters into a contract with a seaman, to go a voyage, not only to define the voyage particularly, but imposes the performance of it as a duty ; that this act is to be construed strictly ; that no custom can be set up to destroy or vary a contract entered into in good faith, under

NEW-YORK,
Nov. 1808.

Hoyt
v.
Wildfire.

a statute; that the contract here was not kept in good faith; and that a *deceit* was practised upon the plaintiff, who was, therefore, entitled to judgment for his wages, according to the contract, from the time he shipped on board, until his return, deducting the sums paid in advance, and the wages received while in another service; and a judgment was accordingly entered for the plaintiff below, for 213 dollars.

The cause was submitted to the court, without argument.

KENT, Ch. J. delivered the opinion of the court. The general rule of maritime law is, that if freight be lost, during the course of the voyage, by a disaster or peril, arising from accident, or superior force, the seamen lose their wages; but if the same be lost by the fraud or other wrongful act of the master, the reason of the rule does not apply. It is just, as well as agreeable to the maritime law, to distinguish between the cases, in which the services of the seamen have not been rendered, in consequence of the perils of the sea, and in which they have not been rendered, by reason of the act of the master or owner. If a seaman be wrongfully discharged from the service, his wages will still continue down to the termination of the voyage. (*Abbott*, 354.) So if the voyage be interrupted and lost, by the act of the master or owner, the seamen have a valid claim for an adequate compensation. The maritime ordinance of *Lewis* XIV. (*des Loyers des Matelots*, art. 3.) provides for this case, by ordaining, that if the voyage be broken up, after it has commenced, by the act of the owner or master, the seamen hired for the voyage, shall be paid their entire wages for the voyage, and those hired by the month, the wages due for the time they had served, and for the time necessary to enable them to return to the port of departure. "The master," says *Pothier*, in his remarks on this article, (*Louage des Matelots, n.* 203.) "ought not

to be discharged from his engagements, because the break-ing up of the voyage was his own act, and a debtor can-not, by his own act, discharge himself of his obligation." The judgment in the court below was conformable to this rule of the *French* law ; and the rule on this subject in the *English* law does not, as I apprehend, differ from the marine law of *France*, though I have not met with any adjudged case that is in point, and a recent *nisi prius* de-cision looks strongly the other way.

In *Eaken* v. *Thorn*, (*Abbott*, 3d. ed. 444. 5 *Esp. N. P.* 6.) it was ruled by Lord *Ellenborough*, that if a ship be not seaworthy when she sails, and the voyage is lost by that means, the seamen cannot recover their wages ; for the rule is general, that the ship must perform her voyage to entitle the seamen to wages, and the neglect of the owner in sending out an unseaworthy ship, might be the object of a special action on the case. Whether the loss of freight, by reason of the want of seaworthiness in the vessel, forms one of the exceptions, I am not pre-pared to say ; but the rule that the voyage must be per-formed, is certainly not universal, and without exception. A voyage lost by the fraud or misconduct of the master, and that so palpable as not to be denied, is not within the reason of the maxim, that freight is the mother of wages. The policy of the rule was well and distinctly assigned in a case in 1 *Sid.* 179. where it was held, that if the ship perish by tempest, enemies, fire, &c. the mariners lose their wages " for if the mariners were to have their wa-ges in those cases, they would not use their endeavours, nor hazard their lives for the safety of the ship." The counsel for the plaintiff in the case of *Abernethy* v. *Lan-dale*, (*Doug.* 539.) stated it to have been held, that if a ship be seized for debt, or for having contraband goods on board, the sailors had a right to their wages up to the time of the seizure. What decision or authority was al-luded to, does not appear : but this is undoubtedly the settled doctrine in the treatises on the *English* marine law. In " the discourse of owners and masters of ships and

NEW-YORK, Nov. 1808.

Hoyt
v.
Wildfire.

mariners," contained in the " sea-laws," p. 457. it is stated as the rule of law, that " if a ship happens to be seized for debt, or otherwise to become forfeited, the mariners must receive wages, unless in some cases where the wages are forfeited as well as the ship ; as if they have letters of marque, and instead of that they commit piracy, by reason of which there ensues a forfeiture of all. But lading prohibited goods on board a ship, as wool, and the like, though it subjects the vessel to a forfeiture, yet it does not deprive the mariner of his wages ; for the mariners having honestly performed their parts, the ship is tacitly obliged for their wages."(a) The same doctrine is maintained in *Malynes' Lex Mercatoria*, (p. 105.) and in the collection of sea-laws annexed to *Malynes*.

We may, therefore, consider this as a rule of the marine law, both in *France* and *England*.

The act of the master, in sailing to the *Isle of France*, with articles contraband of war, under the pretence of a want of water, was a fraudulent act, and from the testimony in the case, there is every reason to conclude, that this was the original destination of the ship, known to the owner, though concealed from the seamen. The contract entered into with the seamen was not kept in good faith,

(a) These are the words of *Molloy*, in his treatise *de jure Maritimo*. (v. 1. p. 354. b. 2. c. 3. sect. 7.)

*Roccus* seems to think that the seamen are entitled to their stipulated wages, if the voyage is not performed, provided they have been guilty of no fault, by which their wages would be forfeited. *Salarium nautæ debetur, quando navis magister ante tempus conventionis completum, licentiam ei dederit, aut eum in terram reliquerit et per eum servire non steterit. Item debetur nautæ salarium conventum cum magistro navis, etiam si magister non naviget ex casu fortuito, et sine culpa ipsius magistri, licet nauta non serviat, dummodo ipse nauta absque licentia magistri navem non derelinquat.* (De nav. et naulo. no. 43.)

The principle that the seaman is entitled to his full wages, though he does not perform the voyage, when the defect of service is not imputable to his fault ; or where the loss of the ship or service is owing to the fault or misconduct of the owner, is recognised by judge *Peters*, in several cases which came before him in the district court of *Pennsylvania*. (*Peters' Adm. Dec.* v. 1. p. 118. 122. 193. 276. and note, p. 481.)

and, as the court below observed, a deceit was practised upon the plaintiff. The ship and freight were justly lost, by a wilful violation of neutral duty ; and the plaintiff below had the soundest claim upon the owner, for the equitable compensation which was allowed to him.

A question was made in the court below, whether the other seamen, who had a common interest in the point in contest, were competent witnesses. The fact would, no doubt, work strongly against the credit of their testimony, and they have been held incompetent in a court of admiralty. (1 *Peters' Adm. Dec.* 211.) But as they were not directly interested in the event of the suit, they were competent witnesses, by the rules of this court.

We are, therefore, of opinion, that the judgment below must be affirmed.

Judgment affirmed.