## Case No. 13,268.

SPURR et al. v. PEARSON.

[1 Mason, 104.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1816.

SEAMEN — CONTRIBUTION FOR EMBEZZLEMENT ON BOARD—WITNESS—INTEREST.

1. When an embezzlement takes place on board of a ship, the seamen are not liable to contribute out of their wages, unless it was caused by their fraud, connivance, or negligence; or, if the offender is unknown, unless a presumption of guilt is fixed upon all the crew, or at least on those, who are called upon to contribute.

[Cited in The Boston, Case No. 1,673; Edwards v. Sherman, Id. 4,298; U. S. v. Stone, 8 Fed. 251.]

2. One seaman may be a witness for another in any suit respecting the same voyage, although interested in the question, if not interested in the suit.

[Cited in The Boston, Case No. 1,673.]

This was an allegation for mariners' wages [by Elijah Spurr and others against Charles Pearson]. The libellants in February, 1816, shipped for a voyage in the ship Augusta,

[1] [Reported by William P. Mason. Esq.]

commanded by the respondent, from New Orleans to Havre de Grace, and from thence to Boston; and afterwards served on board the ship during the voyage. There was no dispute as to the sum due for wages; but the defence turned altogether upon the right of the master to retain their wages by way of contribution for an embezzlement, alleged to have been made by the crew during the voyage. It appeared in evidence that one trunk, and one case of goods of the value of $717, which were taken on board on freight at Havre were missing on unlading the cargo at Boston; but the loss was not ascertained until about ten days after the ship's arrival there. These goods were taken on board a day or two before sailing from Havre, and were stowed in the fore part of the ship, and secured, in the usual manner, by a strong partition or bulk-head, to prevent the crew from getting at them. Orders were repeatedly given by the mate not to have the bulk-head removed, without notice to, or direction from, him. The cook, Paterson, however, a day or two before sailing, and after the trunks were stowed, removed the bulk-head without any notice or direction for this purpose, under the pretence that it was more convenient to get wood in this way, than in an other. At the time, the ship lay in an enclosed dock, and there were three laborers from the shore to assist in the ship's work, during the whole day before she sailed; but they left the ship at supper-time. The officers of the ship did not know of the bulk-head being removed until the next morning. The trunks were so heavy, that they could not easily be removed without the assistance of two men; nor without so much noise, as must awaken the crew, who were sleeping in the forecastle, if done during the night. During the homeward voyage some bonnet trimmings, and some chenille cord, were seen in the possession of Charles Bush, one of the libellants; and some chenille cord and a pair of gloves, in that of James Hamilton, another of the crew. These goods were of a description, as it was alleged, similar to those stolen. Both Hamilton and Bush were in the watch, having care of the ship the night before the departure from Havre. It was not proved that any of the libellants, except so far as the preceding evidence implicated them, were concerned in the transaction, and Luke Wales, one of the libellants, had liberty to go on shore the night on which the embezzlement was supposed to have been made, and did not return until the ship was under way for sea. The owners of the ship had, previous to the commencement of this suit, paid to the consignees the value of the packages so stolen. Hamilton, after the ship's arrival at Boston, was arrested for the theft, on the complaint of the master; and was, at the hearing, in prison under an indictment found against him.

Mr. Munroe, on behalf of respondents, objected to the evidence of any of the crew in

this case, considering them all, as liable to contribute to the loss, and contended that evidence, given by any one of them of embezzlement by any of the rest, was illegal, and ought not to be received. Thompson v. The Philadelphia [Case No. 13,973]. That they being all ordered to be on board, any accident happening to the cargo in consequence of the negligence or misconduct of any part of them, rendered them all accountable. Mariners v. The Kensington [Id. 9,085]; Crammer v. The Fair American [Id. 3,347]; Wilson v. The Belvidere [Id. 17,790]; Brevoor v. The Fair American [Id. 1,847].

Mr. Fales, on behalf of libellants, contended, that by the laws of England a seaman was accountable for his own individual conduct alone. Thompson v. Collins, 1 Bos. & P. (N. R.) 347; Abb. Shipp. 326, and notes. That, if the whole crew were in any instance answerable in a body for embezzlement, it was only, when it was uncertain, which of them committed the offence. That in this case it was well ascertained who did commit the offence; and that the respondent had precluded himself, by his prosecution of Hamilton, from alleging his ignorance of the offender. That the decisions cited for the respondent were supported by no others in this country, and were much weakened by the authorities adduced against them. That this case ought not, therefore, to be affected by them, but should be decided on general principles.

Mr. Munroe, in reply, argued, that it could not be inferred from the prosecution of Hamilton that the respondent considered him, as the only guilty one of the crew; he was arrested in consequence of some of the articles which were lost, having been found in his possession: that it was conceded by the other side, that the whole crew knew of Hamilton's having these articles, and if so, it was their duty to inform, or they made themselves parties to the guilt, and were consequently, all liable to the contribution: that the cases, cited by the counsel for the libellants, were decisions at common law, and, therefore, could not avail to contradict those decided in the admiralty.

STORY, Circuit Justice. An exception has been taken to the competency of some of the crew, who have been sworn as witnesses, upon the general ground, that it is against the policy of the law to allow mariners engaged in the same voyage to be witnesses for each other. And some of the authorities cited do certainly go to the length of asserting, that in suits, where the mariners have a common interest in the point in contest, they cannot be permitted to testify for each other. This is assuming a rule different from the common law, which does not reject the testimony in like cases, unless the witness have a direct interest in the event of the suit. If he have an interest in the question, the objection goes to his credit only, and not to his competency. If, indeed, the maritime law does entertain another doctrine, it might be proper to adhere to it. But it is incumbent upon those who assert it, to establish the existence of such a doctrine. The Consolato del Mare (Casaregis' Ed. c. 221; Boucher's Ed. c. 224, § 620) declares, that mariners may be witnesses for each other after the voyage is ended, where they are not interested in the event of the suit, nor have any expectation of gain or profit thereby.[2] This seems consonant with the rule of the common law. The civil law does not enumerate, among its exceptions to testimony, that, which is now contended for. While it sedulously guards against a person's being a witness in his own cause, or in one, from which he can derive benefit (nullus idoneus testis in re suâ intelligitur, Dig. lib. 22, tit. 5, c. 10; Dom. bk. 3, arts. 6, 8, § 3), and excludes the testimony of persons standing in domestic relations with the parties (etiam jure civili domestici testimonii fides improbatur, Cod. de Test. lex. 3; Poth. Pand. 643, art. 6, § 1; idonei non videntur esse testes, quibus imperare potest, ut testes fiant; Dig. lib. 2, tit. 5. bk. 8; Ferrière, voce "Témoin"; Dom. bk. 3, art. 8, § 3; 1 Poth. Ouvr. 404), it exempts from this latter prohibition mariners in causes of the owner or master of the ship (Cod. lib. 11, tit. 5, c. 3; Peck. ad Rem Nauticam, 397; Casaregis, Disc. 19, notes 28, 29; Cleirac, Contr. Marit. bk. 145, c. 8; Loccen. de Jure Marit. c. 10, § 6. See also, Laws of Wisbuy, art. 9, and 1 Valin, Comm. 302, 303).

The silence of the civil law in such a case is entitled to great consideration; for that law forms the foundation of the maritime usages of all Europe; and if to this we add also the silence of the positive codes of all the great maritime powers, every doubt, which may properly be indulged on this subject, is strengthened and increased. In the researches, which I have been able to make in the ancient and modern codes of commerce, not a single instance has been found, in which the exception contended for has been promulgated or enforced. Under these circumstances I should hesitate a great while, before I should abandon the rule of the common law, which stands strongly supported by principle and authority. Hoyt v. Wildfire, 3 Johns. 518; Abb. Shipp. (Am. Ed.) 1810, p. 540, note. The objection, therefore, to the competency of the witnesses is overruled.

---

[2] "Ancora più un marinaro può fare testimonio all' altro poi siano usciti del viaggio, con che non fusse interessato nel contratto nel quale sarà dato per testimonio, nè che spettassino danno, nè utile." And Casaregis, in his explanation or commentary, says: "Un marinaro, terminato il viaggio, può testificare per l'altro." And Boucher translates the chapter thus: "Encore plus, le marinier peut servir de témoin à un autre marinier après le voyage, pourvu encore qu'il ne soit point interessé dans la contestation, ni qu'il n'espère point de dédommagement ou profit."

But the most important question still remains; whether in any cases, and if so, in what cases, seamen are compellable to contribute their wages to indemnify the owner and master for embezzlements of the cargo of the ship. There can be no doubt, that if an embezzlement be traced home to a particular mariner, he is responsible for the full value. And in a suit for his wages the admiralty will make the proper deduction, or even under some circumstances sustain a direct suit for recompense in damages. In cases of aggravated and inflamed plunderage, the maritime law imposes the additional forfeiture of the whole wages. Consolato del Mare (Casaregis' Ed.) c. 164; Id. (Boucher's Ed.) c. 167. And the last clause in the usual shipping articles is meant to enforce this regulation. Abb. Shipp. (Am. Ed. 1810) Append. No. 8; Thompson v. Collins, 1 Bos. & P. (N R.) 347. In like manner, a mariner may be compelled to recompense the owner and master for any other loss, sustained by his fault, fraud, or negligence. Bellamy v. Russell, 2 Show. 167; Lane v. Cotton, 1 Ld. Raym. 650, per Gould, J.; Molloy, bk. 2, c. 3, § 13; Cleirac, Judgm. of Oleron, art. 11, pp. 27, 28. And if the fault, fraud, or negligence be very gross, and injurious, it may produce a total forfeiture of wages. In each of these cases, however, it seems, that neither public policy nor principle would extend the contribution, or forfeiture, beyond the parties immediately in delicto; and that as to the rest of the crew, who are innocent, the same rules ought to apply, as if the offence were committed by mere strangers; in which case it is admitted on all sides that no contribution is due.

But it is asserted, that another doctrine has received the sanction of authority; and that the policy of the law obliges mariners, engaged for the voyage, to be responsible for each other, so as to sustain the claim in such cases for a general contribution by the whole crew. Some of the cases cited establish a general contribution, even when some of the crew were in a situation to repel every presumption of guilt; while others seem to proceed upon the ground, that, as it could not be fixed upon any person in particular, the presumption of guilt equally attached to all. Mariners v. The Kensington [Case No. 9,085]; Crammer v. The Fair American [Id. 3,347]; Sullivan v. Ingraham [Id. 13,595]; Abb. Shipp. (Am. Ed. 1810) p. 526, note 2. On the other hand, the doctrine of a general contribution for embezzlement has been recently questioned or denied in the courts of common law. Thompson v. Collins, 1 Bos. & P. (N. R.) 347; Lewis v. Davis, 3 Johns. 17. And the present cause now stands before me upon a doubt, suggested by my learned brother, as to the solid foundation of the rule, by which he has felt himself heretofore bound to decide. Under these circumstances it has become the duty of the court to review the grounds of the decision; and to ascertain, if possible, what the maritime law has pronounced upon the subject.

It is remarkable, that in the civil law, where the subject of the thefts of mariners, and the consequent responsibility of the owner and master to the shipper, are distinctly treated of, not the slightest allusion is made either in the text, or in the most approved commentaries, to a general contribution. Dig. lib. 4, tit. 9, cc. 1–7; Dig. lib. 14, tit. 1, cc. 1–7; Dig. lib. 47, tit. 5, lex unica; Peck. Ad Rem Naut. H. T. The same silence, at least as far as my inquiries have extended, pervades, not only the positive codes of all Europe, but all the elementary writers upon maritime law, with the exceptions hereafter taken notice of, even where they discourse upon the subject of embezzlements, from the epoch of the Consolato del Mare to our own times. Consolato del Mare (Casaregis' Ed.) cc. 59, 77, 164, 195; Id. (Boucher's Ed.) cc. 62, 80, 167, 198; Targa, c. 17, § 12; Roccus de Nav. notes 40, 62; Laws of Wisbuy, art. 47; Casaregis, Disc. 23, note 81; Kuricke, 714, note 9; Id. 719; Straccha de Nautis, pt. 3, note 18; Stypmn. Jus. Marit. pt. 4, c. 17, p. 571; Loccenius Jus. Marit. lib. 3, c. 8, f. 1037. See, also, the Laws of Oleron, of the Hanse Towns, of Wisbuy, of France, of Rotterdam, in Cleirac, Malyne, Peters' R. (App.), Magens and Sea Laws; Rhodian Laws, in Sea Laws, p. 199, etc., and particularly section 1, arts. 19, 20, p. 207, and section 2, arts. 2, 3, p. 209; art. 50, p. 233; Peck. Ad Rem Naut. tit. Rhod. Jus. Navale, arts. 1, 2, 3; Malyne, 103, 104; Collection of Sea Laws in Malyne, 55, 56; 1 Emerig. 381, 604. The natural inference from these considerations would seem to be, that this rule of construction if ever established, has not been as universally adopted into the maritime law, as some of the recent authorities would lead us to imagine.

Molloy (book 2, c. 3, § 9, cited also in Sea Laws 455) has been supposed to support the rule in its most enlarged extent. But even admitting his authority, which is certainly questionable, it may well be doubted, if the obscure terms, in which he has expressed himself, warrant such an inference. He barely states, that, "if the goods are so embezzled, or so damnified, that the ship's crew must answer, the owners must deduct the same out of their freight to the merchants, and the master out of the wages of the mariners." And he adds, "for before the mariner can claim his wages out of what the ship hath earned, the ship must be acquitted from the damage, that the merchant hath sustained by the negligence or fault of the mariners; and the reason is, for that as the goods are obliged to answer the freight, so the freight and ship are tacitly obliged to clear the damage; which being done, the mariners are let in for their wages."

Molloy has not attempted to enumerate the special cases, in which the crew are liable for goods embezzled; and if he is to be un-

derstood to assert in the reason given in the close of the passage, that the seamen are liable to a deduction of their wages in all cases. where the ship and freight, or rather the owner and master, are liable for damage of the goods, his position is not law. It seems to me that his real meaning is, that the seamen are responsible only, when the damage has been sustained by their own fault or negligence. And the learned Mr. Chief Justice Kent has placed this doctrine upon its true footing. Lewis v. Davis, 3 Johns. 17. Molloy, therefore, may be safely dismissed without further comment.

Valin, however, speaks in a more clear and decisive language. After remarking, that embezzlements are very common in voyages from America (the American colonies of France); and that it is extremely rare, that the offenders are discovered, he says, that the policy adopted to indemnify the shippers, when the thief cannot be ascertained, is, to apportion it upon the whole crew indiscriminately, as well the captain, as the officers and seamen, according to the ratio of their respective wages. And he adds, that this apportionment is made upon the captain and officers, not from any suspicion, that they are concerned in the offence; but to make them more attentive, from personal interest, to prevent embezzlement by the crew. And he distinctly admits, that no contribution can be claimed, when the goods have been stolen by a particular person. 1 Valin, Comm. 459, 460. The authority of Valin stands deservedly high from his general accuracy and learning. But it is not quite clear, whether he means here to speak of a general rule of the maritime law or French law, or of a particular custom in the American trade. If the latter be his meaning, and there is much probability in the supposition, it has nothing to do with the question before the court. This supposition derives some confirmation from the fact, that neither Emérigon nor Pothier, in treating upon the general subject, refer to any such apportionment. 1 Emérig. 381, 604; Poth. Louage Marit. p. 2, § 2, note 153; Id. p. 3, § 2, note 178. But let us proceed to consider the doctrine of Valin, assuming him to pronounce it as a general rule of the maritime law. It must be admitted in the first place, that he does not contend for a contribution, when the offence is fixed upon an individual; but only when the author is unknown. In the next place, he makes no distinction as to contribution, whether from the facts of the case the presumption of committing the offence rest upon the whole, or a part of the crew, or upon mere strangers; and yet a distinction in the latter case is strongly upheld by principle and authority. In the third place, he cites no authority for his doctrine; and no inconsiderable difficulty attends it, since it derives no support from other maritime jurists, or from the acknowledged principles, that regulate the contract for hire. Why should a mariner, any more than any other laborer on wages, be responsible for the acts of others, in which he has had no participation or connivance? If he has been guilty of fraud, or negligence, or has connived at, or aided in, the embezzlement, he may be justly charged upon the general principles of the contract. But if nothing of this sort be justly imputable to him, it is not easy to perceive, why he should be responsible for those, over whose actions he has no legal control. And whatever may be the policy of including the officers of the ship in the general contribution, it remains to establish its legal propriety and justice.

It is certain, that the doctrine of Valin has not been incorporated into the English maritime law; or, at least, its existence is nowhere clearly stated, or proved. And it has been very pointedly remarked, "that if such be the rule of law, it is scarcely possible, but that it must have been often mentioned in our (English) books, and as well known, as any rule of maritime law, since frequent occasions must have arisen for the application of it." Per Chief Justice Mansfield, in Thompson v. Collins, 1 Bos. & P. (N. R.) 347. And in the very case, in which this remark was made, it was manifestly the opinion of the whole court, that no such rule existed. The construction, too, put by the court in that case, upon the last clause in the shipping articles (which is also in the usual shipping articles in the United States), negatives altogether the notion of any joint responsibility. That construction is, that the words are to be referred respectively to every seaman, who shall plunder, embezzle, or commit an unlawful act; so as to make each person answerable only for his own default. It appears to me, that this decision is founded in sound reasoning; and if so, it must entirely supersede the supposed rule of contribution now contended for, in all cases governed by the shipping articles; since it is the law of the contract, and excludes every contradictory implication.

Nor does the supposed rule of contribution gain any additional force from the analogous cases, where compensation is made by the officers and crew for losses occasioned by bad ropes, or negligence in hoisting or storing goods. Notwithstanding the language in some of the authorities, it may well be doubted, if the contribution in those cases extends beyond the persons, by whose fault or negligence the damage has been occasioned. See Wilson v. Belvidere [Case No. 17,790]; Laws of Oleron, arts. 10, 11, 27; Laws of Wisbuy, art. 49; Malyne, 103; Sea Laws in Malyne, 55; 2 Valin, Comm. 79, 161; Casaregis, Disc. 23, note 65, et seq.; Consolato del Mare (Casaregis' Ed.) c. 24; Id. (Boucher's Ed.) c. 247.

Upon the whole my opinion is, that the rule of contribution, as contended for at the argument, and as asserted by Valin, cannot be sustained as a general rule of the mari-

time law; that it has not that general sanc-. tion, or universal use, which entitles it to such a consideration; and that it has not such intrinsic equity or justice, as that, in the absence of direct authority, it ought to be adopted as a limit upon judicial discretion. On the contrary, it seems to me, that the true principles, which are to govern in these cases, are those of the general contract of hire; and that the most, that the maritime law has done, is to enforce these principles, by allowing the owner and master to make an immediate deduction from the wages of the offending parties, instead of driving them to the circuity of an action for damages. The result of this opinion is, that where the embezzlement has arisen from the fault, fraud, connivance, or negligence of any of the crew, they are bound to contribute to it, in proportion to their wages: that where the embezzlement is fixed on an individual, he is solely responsible: that where the embezzlement is clearly shown to have been made by the crew, but the particular offenders are unknown, and from the circumstances of the case, strong presumptions of guilt apply to the whole crew, all must contribute. But that where no fault, fraud, connivance, or negligence is proved against the crew, and no reasonable presumption is shown against their innocence, the loss must be borne exclusively by the owner or master: that in no case are the innocent part of the crew to contribute for the misdemeanors of the guilty; and further, that in a case of uncertainty, the burden of the proof of innocence does not rest on the crew; but the guilt of the parties is to be established beyond all reasonable doubt, before the contribution can be demanded. In delivering this opinion, I am fully aware, that it encounters that of learned judges, for whom I entertain the most entire respect and deference: and the weight of their judgment has induced me to pause at every step of the investigation. But after much deliberation I have pronounced the opinion, which has my most unhesitating assent. It stands supported, as I trust, by the negative testimony of the oracles of the civil and maritime law; and by the positive adjudications of some of the most respectable judicatures of our own country, and Great Britain. Thompson v. Collins, 1 Bos. & P. (N. R.) 347; Abb. Shipp. p. 4, c. 3, § 5; Lewis v. Davis, 3 Johns. 17.

It will now become necessary to apply these principles to the present case. In the first place, the cook was grossly disobedient as well as negligent, in removing the partition, by which the loss was occasioned. He ought, therefore, to contribute to the whole extent of his wages. In the next place, there is a vehement suspicion attached to Hamilton and Bush, as being either principals, accessories, or connivers in the embezzlement. The goods, found in their possession, are said to be of the same description as some of those stolen. Under such circumstances, it is incumbent on them to explain the manner, in which these goods came into their possession; and, if they fail so to do, the presumption of their innocence is not maintained. In respect to the rest of the crew, as neither the time, manner, nor circumstances of the embezzlement, are distinctly proved, it is difficult to charge them with fraud, negligence, or connivance. It is the undoubted duty of mariners to attend carefully to the preservation of the ship and cargo. But the general presumption of law, that every man does his duty, ought to prevail in their favor, until the contrary is shown. The burden of proof, to establish the right of contribution, rests in this case on the respondent; and, as he has not supplied that proof, a decree must be pronounced, that the libellants, with the exception of Bush and Hamilton, recover their wages. Under the circumstances, no costs are to be allowed to either party.