# CASES

# SUPREME JUDICIAL COURT

### THE COUNTY OF KENNEBEC, JUNE TERM, 1833.

---

## HALL & al. vs. WILLIAMS.

H. instituted process against W. and F. in the Superior Court of · *Georgia*, founded on an alleged joint contract. F. not being within reach of process, no service was made upon him. W. appeared, pleaded the general issue, which was joined, and a verdict was thereupon rendered in favour of H. and judgment entered up against W. and F. *both.* Afterward, the same Court on motion of H. and after notice to the attorney of W. who had been employed in the defence of the action, (W. himself having left the State some years before, and not having returned,) permitted an amendment of the record, by striking out the name of F. and entering up judgment against W. alone. In a suit against W. founded on the *amended* judgment, it was *held :*

That, the original judgment was erroneously entered up against F. and could have no binding efficacy in the Courts of this State. As *amended,* this Court was bound by the Constitution and laws of the *U. States,* to give " full faith and credit" to the record.

That, where the error in making up a judgment, is in the Court, it cannot be amended at a subsequent term *on motion ; — aliter* where the mistake is that of the Clerk.

That, the absence of the defendant from the State, could not limit the authority of the Court with regard to the amendment. After their jurisdiction over

the cause had once attached, they could not be ousted of it, by the change of domicil of one of the parties.

That, notice to the attorney of the defendant, before granting the amendment, was not indispensable ; but was a matter entirely within the discretion of the Court.

THIS was debt on a judgment rendered by the Superior Court of the State of *Georgia*. *Nul tiel record* was pleaded with a brief statement, and issue joined thereon. The plaintiffs adduced in evidence, an exemplification of the records of the Court in *Georgia*, by which it appeared that original process was commenced by the plaintiffs against the defendant and one *Abijah Fiske*, former copartners in business under the style of *E. Williams & Co.*, *May* 4, 1824. That, judgment was rendered against *both*, *February* 12, 1825, though *Fiske* had had no notice of the suit, being at the time out of the reach of process.

It further appeared on trial, that the defendant had been a citizen of *Georgia*; but that, in *June*, 1824, he established his domicil in *Augusta* in this State, and that he had not since that time been within the limits of the State of *Georgia*. Nor did it appear that he had, since that time, had any property in that State, or any agent or attorney there, except the attorney who had defended the suit, and he having no special power or authority whatever.

It further appeared by the record, that the same Court, *January* 19, 1829, on motion of the plaintiff's counsel, permitted an *amendment* of the record, by striking out the name of *Fiske*, and entering up judgment *nunc pro tunc*, against *Williams* alone; alleging it to have been done, after notice to *W. W. Gordan*, the defendant's attorney.

In *February*, 1825, *Williams* appeared and answered to the action, and after trial a verdict was returned in favour of the plaintiffs, on which the judgment was rendered which formed the basis of this action.

A verdict in this case was taken for the plaintiffs, subject to the opinion of the whole Court, on the report of the presiding Judge. If the record relied upon, should be held competent and sufficient evidence to maintain the action, judgment was

to be rendered on the verdict.    Otherwise, to be set aside and
the plaintiffs to become nonsuit.

*Allen*, for the defendant.

1. The original judgment was valid and binding on *both* of
the defendants or on neither.    It was entire, and cannot be
good as to one, and not as to the other.    *Richard & al. v.
Walton*, 12 *Johns.* 434.

2. The subsequent record, and amendment of *Jan.* 1829,
are entirely inoperative against the defendant, for various rea-
sons : —

1. The defendant had years before removed from the State,
and had not then returned — nor did he in any way receive
notice of the plaintiff's petition or motion, and of the intended
action of the Court thereon.

2. Nor had he any attorney in that State.    *Gordan*, who
was the attorney in the original suit, had no authority to act as
such beyond the termination of the suit.    When judgment was
made up, his attorneyship ceased.    It is true that the relation
of attorney to the *plaintiff* may continue after judgment, for
the purpose of levying the execution, &c. — but it is other-
wise with the *defendant's* attorney.    The mere recital in the
record of *Gordan's* being attorney is no evidence of the fact,
unless he appeared and acted as such, which does not appear.

3. The defendant being out of the State, and having no
agent or attorney, or property there, the Court in *Georgia*, in
1829, had no authority to make the amendment.

That a judgment rendered by a Court in any one of the
States against a person not a citizen of that State, and having
no estate, agent or attorney therein, is void in another State,
is not now to be questioned.    *Bissel v. Briggs*, 9 *Mass.* 462;
*Hall & al. v. Williams & al.* 6 *Pick.* 232, and cases there
cited.

4. But aside from the circumstance of the defendant's ab-
sence from the State, and having no property or agent there,
the alteration in the record was a material one, and could not
be legally made.    1 *Bac. Abr.* 105, *tit.* " *Amendment of Judg-
" ment."*

Hall & al. *v.* Williams.

It was not a mere misprision of the clerk, though in that case the defendant would have been entitled to notice. The law requires the plaintiff to *sign* judgment. This was done in 1825, and the record made up. There cannot, therefore, be any misprision of the clerk. *Dig. of Laws of Georgia*, 2, 211 ; 1 *Com. Dig.* 336, *tit. " Amendment of Judgment."*

This alteration was material and prejudicial to *Williams. Before* the alteration, the goods of *Fiske* in that State might have been liable, and might have been seised. *After* it, *Williams* must sue for contribution, and the judgment to which *Fiske* was no party would not bind him. 3 *Bos. & Pull.* 254 ; 16 *Johns.* 109 ; *Story's Pleadings*, 2d ed. 374 ; *Jacob's Law Dic. tit. Amend. of Judgt.* 90 ; *Tidd's Prac.* 861 ; *Vin. Abr. Judgt.* I. *a.*

If the court in *Georgia* could make this amendment four years after judgment rendered, and when the parties had left the State, there is no limitation of time when it may not be done.

The constitution of the *United States*, it is true, requires that full faith shall be given to records of one State by other States. But how can full faith and credit be given to a record which gives contrary certificates of the same fact ? One is a judgment against *two* — the other a judgment against *one.*

No principle of comity or public policy calls upon this Court to respect this altered judgment, especially when the court which rendered it, must have supposed that the defendant was present by his attorney, when in fact he had no attorney.

*Sprague*, for the plaintiffs.

There having been no service on *Fiske* in the original suit, the judgment entered up against him and *Williams* both, was by *mistake*. It should have been against *Williams* alone — and the judgment thus made up, stood as if it had included persons who were not named in the writ, and in no way connected with the process. *Dennett v. Chick*, 2 *Greenl.* 191 ; *Tappan v. Brewer*, 5 *Mass.* 196 ; *Hall & al. v. Williams & al.* 6 *Pick.* 232.

The constitution of the *United States* says, that full faith

# 282 KENNEBEC.

and credit shall be given, to the records of one State by other States. Therefore, it is not a matter of inquiry here, whether the amendment was correctly made or not. The record is certified here as the judgment in that case — it is the only judgment in that case. And it is not competent for this Court to look into the anterior proceedings, to see by what means the court in *Georgia* arrived at the result it did. It would be revising the decisions of that court — and decisions too, in regard to the statutes of that State. This cannot be done. It never has been decided that any question is open in regard to the decision of another State, not even that of *jurisdiction*. *Mills v. Duryee,* 7 *Cranch,* 481 ; *Hampton v. McConnell,* 3 *Wheat.* 234 ; *Commonwealth v. Green,* 17 *Mass.* 546.

This judgment, is a domestic judgment, to all intents and purposes; and no plea can be received, which would not have been received by the tribunals of *Georgia.*

But if the jurisdiction is to be inquired into, it is contended that sufficient jurisdiction appears in the case. This judgment now produced, is such as it ought to be. *Williams* having been an inhabitant of *Georgia,* there was service of process upon him — there was an appearance by him — a trial had — and a verdict rendered against him.

Maintain that the court had power to make this amendment — and that too, without notice to the defendant or his attorney. *Atkins v. Sawyer,* 1 *Pick.* 351 ; *Crofton v. Ilsley,* 6 *Greenl.* 48 ; *Close v. Gillespie,* 3 *Johns.* 526.

Amendments are allowed in other cases where quite as much authority is claimed. For instance, in the return of an officer on an execution, after a levy has been made. In which case the amendment is made *nunc pro tunc* — it has a retroactive effect, and establishes the validity of the levy.

So the courts permit town clerks to correct records. If they can do this, can they not permit or direct their own clerk to amend their own record ?

Again, it is contended that, if it be necessary that the defendant or his attorney should have notice before such amendment be made, that the record finds it. *Gordan,* the attorney,

Hall & al. *v.* Williams.

had notice. He was not discharged by the rendition of judgment. *Stimpson v. Sprague,* 6 *Greenl.* 470 ; *Dearborn v. Dearborn,* 15 *Mass.* 316.

By the record it appears that *Gordan,* at the time, was the attorney of the defendant, and that fact is not now to be contradicted. Whatever appears on record is conclusive. Besides, it is to be presumed that the court in *Georgia* had proof that *Gordan* was the attorney of *Williams.*

The amendment of the record in the mode adopted, is the only one, in which the justice of the case could be reached — the only way, in which the plaintiffs could reap the benefit of their verdict.

But if the original judgment in 1825, is to stand, and the amendment to be disregarded, even then, this suit may be maintained. *Fiske* is not an inhabitant of this State, and therefore, need not be joined. And again, want of proper defendants should be pleaded in abatement, which has not been done here.

The opinion of the Court was delivered at the ensuing *June* term, in this county, by

PARRIS J. — The first section of the fourth article of the constitution of the *United States* provides, " That full faith " and credit shall be given, in each State, to the public acts, " records, and judicial proceedings of every other State. And " the Congress may, by general laws, prescribe the manner in " which such acts, records and proceedings shall be proved, " and the effect thereof." In pursuance of this power, an act was passed prescribing the mode of proof, and declaring " That " the said records and judicial proceedings, authenticated as " aforesaid, shall have such faith and credit given to them, in " every court within the *United States,* as they have by law or " usage in the courts of the State from whence the said records " are or shall be taken."

The construction of these constitutional and statute provisions has been the subject of consideration in the highest courts of several of the States, as well as the Supreme Court of the *United States* ; and, although the language is general and might

apply to all judicial proceedings, of however unique or informal character, yet, the better opinion seems to be, that the judicial proceedings of courts in the several States are not entitled, under the provisions aforesaid, to this faith and credit in other States, unless the court had jurisdiction of the subject matter of adjudication ; as where the defendant had been a party to the suit by an actual appearance and defence, or at least, by having been duly served with process, when within the jurisdiction of the court which rendered the judgment.

The case at bar is debt on a judgment rendered by the Superior Court of the State of *Georgia ;* — to which the defendant has pleaded *nul tiel record.* The plaintiffs adduced in evidence an exemplification of the records of said court duly certified, containing a judgment corresponding with that declared on.

From the whole record it appears, that the plaintiffs originally declared in assumpsit against the defendant and one *Abijah Fiske,* as late partners under the firm of *E. Williams & Co.* ; — that the usual process was issued thereon requiring the defendants to appear and answer, but that the service was made on *Williams* only, the other defendant not being in the country ; — that *Williams* appeared by his attorney and pleaded to the suit, but no appearance was ever entered for *Fiske,* or any notice taken of him, as a party, in the course of the trial. The issue made up between the plaintiffs and *Williams* was put to a jury, who returned their verdict in favour of the plaintiffs, and the judgment now declared upon was rendered upon that verdict. If the case stopped here there could be no doubt of the plaintiffs' right to recover. — It would clearly fall within the cases of *Bissell v. Briggs,* 9 *Mass.* 462, and *Borden v. Fitch,* 15 *Johns.* 121.

But the record shews that the judgment was originally entered up against both *Williams* and *Fiske,* and that subsequently, on motion of the plaintiff, and after notice to *Williams'* attorney, who originally appeared in defence of the suit, the judgment was amended and entered up against *Williams* alone. For this reason, as the defendant contends, the judgment has lost its conclusive character, and is not to be received in the

Hall & al. *v.* Williams.

courts of this State, as entitled to full faith and credit under the constitution and law of the *United States.* If the suit had been originally prosecuted in the courts of this State, what should have been the course of proceeding in order to have secured the plaintiffs a judgment of such incontrovertible verity, as to insure its reception as conclusive evidence in the courts of the other States in this Union?

The plaintiff has a demand, arising out of a partnership transaction, against two or more, who are jointly liable. He brings his action against them all, and if some of them reside without the jurisdiction of the court, having no usual place of abode within the State at which a summons may be left, nor any property liable to attachment, he causes his writ to be served only on the defendants within the State, and if he sustain his action, he must take his judgment only against those who were served with the process; he can have it against no other. *Tappan v. Bruen,* 5 *Mass.* 196. Even where the action was upon a bond, and the officer making the service certified that one of the defendants had no last and usual place of abode in his county, a motion to dismiss the action was overruled and the court directed it to proceed. *Call v. Hagger,* 8 *Mass.* 423. This has been the immemorial practice in *Massachusetts,* and has been continued by the courts in this State, without any inconvenience or injustice to the defendants. For if all the debtors are included in the process and judgment, the creditor may satisfy his execution out of the estate of whichever he pleases. If, therefore, the plaintiffs had prosecuted their suit in *Georgia,* with reference and according to the law of this State and the practice of our courts, he would have proceeded in issuing his process precisely as he has; he would have declared against both *Williams* and *Fiske,* and if the officer had returned that *Fiske* was not within his jurisdiction, the suit would have proceeded against the defendant only, who was served with the process. It did so proceed. To this course the defendant assented by pleading the general issue, thereby waiving all cause of abatement, if he had any. This issue, made up between the plaintiffs and defendant, was put to the jury, and their verdict returned thereon. The judgment should have followed

the issue and verdict. Thus far there was no irregularity in
the proceedings. They were substantially such as would have
been had in a like case under our laws and practice. But, by
a paper in the record, it appears that the judgment was orig-
inally entered up against both defendants, and subsequently
amended. It is very clear that the amended judgment is the
one that the Court should have rendered upon the verdict, and
the only one they could legally render upon the whole case,
according to the course of procedure at common law. By the
amendment, a mistake, which was made either by the clerk or
attorney, has been corrected. It is not perceived that the de-
fendant can suffer injury by this amendment, or any inconve-
nience, other than what he would have been subjected to, if the
proper judgment had been originally rendered. Still, if it be
such an irregularity as to destroy the conclusive character of the
judgment, he has a right to avail himself of it.

It was urged upon us, in argument by the plaintiffs' counsel,
that, under the law of the *United States*, we are to give the
same force to this judgment, as would be given to it by the
courts of *Georgia*, and that we are not to inquire whether the
court from which the record comes had or had not the right to
alter their record and their judgment; — and the cases of
*Mills v. Duryee*, 7 *Cranch*, 481, and *Hampton v. McConnel*,
3 *Wheat.* 234, were relied upon as authorities. To a certain
extent, we admit this position to be sound. But suppose the
Superior Court of *Georgia* should undertake to amend the re-
cord of a judgment by adding the name of an entire stranger,
as defendant, one who neither resided himself, or had any pro-
perty within the State ; — who had no notice of the suit, and
had never submitted to the jurisdiction of the court. Could
we be called upon to enforce such a judgment against the new
party ? — should we listen to the suggestion that the judgment
was binding in *Georgia*, because the highest court of judicature
there had so adjudged it, and that therefore, under the law of
the *United States*, it was binding here, and in every other
State in the Union.

Any court would be slow to believe that the constitution and
law of the *United States* imposed upon the State judiciaries an

obligation so dangerous in its consequences, so directly at war with fundamental principles; or that the very respectable tribunal, which decided *Mills v. Duryee,* and *Hampton v. McConnel,* ever contemplated such a case as falling within the principles of these decisions.

These cases required no such construction. In both of them the defendants were within the jurisdiction of the courts whose judgments were questioned, had notice to appear, and did appear and made defence. The language of the opinion delivered by the court must be taken in reference to the facts in the case decided, and the particular question under consideration. In the case supposed, we would not hesitate to pronounce the judgment utterly void; a mere nullity; an attempt to subvert the first principles of justice, and not deserving the name of a judgment; and the power of this Court would be invoked in vain to carry it into execution. But the exemplification of the record before us presents a very different state of facts. The defendant was within the State when the jurisdiction of the court attached; had personal notice of the suit; appeared, defended, went to trial, and a verdict was found against him, which rendered him individually liable for the whole sum. No appearance of unfairness in the record; none suggested in the argument. The defendant is not injured by the amendment. If the judgment had remained as originally entered, he would have been liable for the whole, if that judgment had been valid, as a joint judgment may be collected of either of the judgment debtors, but as it was rendered, if the plaintiffs had enforced payment of the defendant, he could not have used the judgment as evidence against *Fiske* in a suit for contribution. True, if the judgment had been properly rendered against *Fiske,* the record would be, *prima facie,* evidence of his legal liability to contribute; but when the very record would shew that *Fiske* was not an inhabitant of *Georgia,* had never been served with notice of the suit, nor submitted himself to the jurisdiction of the court by appearing or making defence, the judgment, as it regards him, becomes a nullity, and cannot have any effect as evidence against him. — The defendant, then, loses none of his rights against *Fiske* in consequence of the amendment; —

neither are they in any way impaired or rendered more diffi-
cult to be enforced. If the debt be one for which *Fiske* is le-
gally bound to contribute, the defendant has his remedy as per-
fectly under the amended judgment, as he would have had un-
der that first entered up.

Whether a court has the power to order an amendment of
the record of a judgment at a subsequent term, is a question
upon which there are many decisions, both in the American and
English Reports. In *Cradock v. Ratford*, 4 *Mod.* 371, an ap-
plication was made to amend a judgment which had been signed
twenty years. On its revival by *scire facias*, it appeared that
the judgment had been originally entered up, " that the afore-
said *Thomas* might recover," instead of " the aforesaid *Arthur.*"
The court was moved that the roll might be brought in and
amended, it being only the fault of the clerk. — The defend-
ant's counsel urged that it was not amendable, being an error in
judgment, which must be considered as an act of the court,
and not of the clerk. But the court said, these amendments
have frequently been made, and they directed the amendment
accordingly. In *Hanckford v. Mead*, 12 *Mod.* 384, a similar
amendment of judgment was ordered, and *Gould J.* said, he
remembered a case where the like fact was amended, on mo-
tion after twenty years; — probably referring to *Cradock v. Rat-
ford. Short v. Coffin*, 5 *Burr.* 2730, was an action against an
executor. The judgment was rendered by mistake, *de bonis
propriis*, and upon a motion for leave to amend by making it
*de bonis testatoris*, the court were of opinion that the amend-
ment ought to be made, it not being an error in point of law,
but a mere mistake of the clerk. In *Smith v. Fuller*, 2 *Str.*
786, the defendant was found not guilty as to part, but no
judgment was rendered for him. The court ordered the record
to be amended by the verdict, and the judgment to be entered,
even after error brought, and the record removed, and the want
of judgment objected for error. *Com. Dig. Amendment, R.*

In *Atkins v. Sawyer*, 1 *Pick.* 351, the court directed that
a judgment entered against A. as administrator, instead of
against the goods and estate of the intestate might be amended
by another part of the record, upon motion. — In *Close v.*

Hall & al. *v.* Williams.

*Gillespie,* 3 *Johns.* 518, the court permitted an amendment to be made, *nunc pro tunc,* though a subsequent judgment had been entered up against the defendant, on which a preference was claimed on account of the defect in the first judgment. *Spencer J.* in delivering the opinion of the court, says, " There " can be no doubt but an amendment is proper and ought to " be granted. The court of K. B. in *England* have permitted " amendments rendered necessary by the mistake of one of " their attornies. — I cannot discover any difference as to " allowing amendments, whether the mistake has happened " through the omission of an attorney, or by that of a clerk. " Both are equally officers of the court." — In the *Bank of Newburgh v. Seymour,* 14 *Johns.* 219, the Supreme Court of *New-York* permitted the record of a judgment to be amended by adding the name of a defendant. — The plaintiff moved for leave to amend the record of the judgment, by inserting the words " and *Lemuel Smith,*" after the words " *Wright Seymour,*" and by adding the letter *s* to the word defendant, wherever it occurred in the record, and that the judgment be entered *nunc pro tunc* against *Smith.* — The plaintiff's attorney read an affidavit stating that the omission of *Lemuel Smith,* in making up the judgment, was by mistake of a clerk in his office. The court granted the rule, saving to all persons the rights they might have, *bona fide,* acquired, either in the real or personal estate of *Smith* from the time the judgment was rendered against *Seymour,* until the time of granting the amendment inserting *Smith.* In *Mechanics' Bank v. Minthorne,* 19 *Johns.* 244, the clerk made a mistake in assessing damages on a promissory note, which was not discovered until after the judgment was entered up, and the defendant had paid the amount of the judgment to the plaintiff's attorney, and satisfaction thereof had been entered. The court, at a subsequent term, ordered the entry of satisfaction, and all the proceedings in the cause, after interlocutory judgment to be vacated, and the clerk's assessment of damages, the record of the judgment, and the satisfaction thereof to be annulled and cancelled, and the damages to be re-assessed by the clerk. — See also *Chichester v. Cande,* 3 *Cowen's R.* 39, and *Hart v. Reynolds, ibid.* 42, *note,*

Hall & al. v. Williams.

where an amendment *nunc pro tunc* was granted after a lapse of more than six years subsequent to the entering up the original judgment. In *Hammer v. McConnel*, 2 *Hammond's Rep.* 31, *Hammer* brought an action for goods sold and delivered to *J. & A. McConnel*, as partners in trade; — process issued against both, but as to *John*, was returned not found. *Alexander* appeared and pleaded to the action separately. The verdict was returned as against both, and a joint judgment was rendered thereon. At a subsequent term, the plaintiff moved for leave to amend the judgment by striking out the name of *John*. The defendant moved to set aside the verdict and judgment as irregular, and award a *venire facias de novo* ; — and also, in the event this motion should be overruled, he moved for a writ of error. — The court say the verdict in this case is a substantial finding for the plaintiff. The issue was between the plaintiff and *Alexander*, and upon that issue alone the jury could decide. There is no difficulty in understanding how *John* was connected with the case, and it is perfectly easy to see how it happened that his name was included in the verdict. It was a mere formal error. It was the duty of the clerk to record the verdict according to the parties at issue, and to have entered the judgment in the same way. As a mere clerical error, it is still amendable. The amendment was accordingly allowed. In *Crofton v. Ilsley*, 6 *Greenl.* 48, this Court permitted the record of a judgment to be amended, while an action of debt was pending on the judgment, whereby the action was wholly defeated.

These are strong cases in support of the decision of the Superior Court of *Georgia*. — In the argument of the case at bar, it was urged by the defendant's counsel, that the first judgment was entered up erroneously by the mistake of the plaintiffs' attorney, who, according to the course of proceedings in *Georgia*, is required to sign the judgment ; and that the court has no power to grant amendments, except to heal the mistakes of their clerk. Whether this was the mistake of the clerk or attorney we are not informed, but if of the latter, the cases from the *New-York* reports are directly applicable and justify the amendment. Wherever the error is in the court, as a matter of judgment or express direction, it cannot be amended on motion ;

the law has pointed out another course, and that must be pursued. But whenever the judgment is erroneously entered up, by the mistake of the clerk or other officers of the court, it seems to be well settled by the enlightened judiciary of *New-York*, that it can be corrected on motion, if there be any thing on the record by which the amendment can be made. There was no difficulty on this point in the case before us. The whole process shews that the judgment should have been against *Williams* only.

We are not called upon to decide whether we should have granted such a motion, or have turned the party round to another remedy. All that is now required of us, is to determine whether the proceedings in the Superior Court of *Georgia*, were so irregular as not to be entitled to that full faith and credit, contemplated in the fourth article of the Constitution of the *United States*. We think they come fairly within that provision, and that the judgment, being properly authenticated, is to have full faith and credit given to it in the courts of this State. We have not noticed the absence of *Williams* from the State of Georgia, at the time the amendment was made. The case shews that the attorney who conducted his defence was notified. But even if he had not been, the jurisdiction of the court having attached, and been assented to by the defendant by appearing and pleading to the merits, the court were not to be ousted of their jurisdiction over the case by his removal or change of domicil. It was not a case in which notice was indispensable. The court might order it, or not, at their discretion.

A judgment had been rendered against *Williams*, and there was no motion to amend the record so far as it related to him. Another name had been inserted by mistake ; — by the amendment that mistake was corrected, and the record made to speak the truth. As such we are bound to receive it, and to give it effect.