BROWN (CAHILL v.). See Case No. 2,291.

BROWN (CAMPBELL v.). See Case No. 2,355.

BROWN (CASE v.). See Case No. 2,488.

## Case No. 1,998.

BROWN et al. v. CHANDLER.

[1 San Fran. Law. J. 277.]

District Court, D. California. Dec. 29, 1877.

SEAMEN—EXTRA WAGES—CASTING AWAY VESSEL—LIABILITY OF OWNER.

[1. The willful stranding, neglect to save, and subsequent sale of a vessel by her master do not relieve the owner from liability to the seamen for three months' extra wages, under Rev. St. § 4582, notwithstanding section 4583, providing that such liability shall not extend to cases where the vessel is "wrecked or stranded, or condemned as unfit for service," or section 4526, providing that seamen shall only be entitled to wages prior to termination of their service by wreck or loss.]

[2. Where the loss is without the privity or knowledge of the owner, by Act March 3, 1851 (9 Stat. 635), his liability for such extra pay is restricted to the proceeds of the vessel after payment of wages to the termination of the voyage.]

[In admiralty. Libel by John Brown and others, seamen, against R. D. Chandler, shipowner, for three months' extra wages under Rev. St. § 4582. Decree for libellants.]

E. P. Cole, for libellants.
Milton Andrus, for respondent.

HOFFMAN, District Judge. The question presented by the exceptions in this case is whether the owner of a vessel is personally liable to seamen for damages occasioned by the breaking up of the voyage by the willful and criminal acts of the master in voluntarily stranding her, omitting to get her off, and subsequently selling her. It is well known that by the maritime law the right of the seamen to wages was dependent on the earning of freight. But this rule was subject to the exception that where the earning of freight has been prevented by the fault of the owner or master the wages will be due. So, also, where the services of the seamen have not been rendered, a distinction is recognized between cases where he is prevented from rendering them by perils of the sea and those where they have not been rendered by reason of the act of the master or owner. Hoyt v. Wildfire, 3 Johns. 518. In the construction of the act of 1803 [2 Stat. 203] the same principle was uniformly recognized. That act [section 3] required the master to pay three months' extra wages to the consul whenever a vessel was sold and her company discharged in a foreign port. But it was held, notwithstanding the comprehensiveness of the language, that the statutes did not apply to cases of forced sales rendered necessary by the perils of the seas. The Dawn [Case No. 3,666]. By the act of 1856, c. 127, § 26 [11 Stat. 62], the master was relieved from the payment of extra wages in cases of wrecked or stranded vessels or ships or vessels condemned as unfit for service. The same provision is re-enacted in Rev. St. § 4583. Under this statute it has been held that the exemption did not apply to cases "where the enterprise is terminated by a loss or condemnation for which the owners are directly responsible by their own neglect." The Wenonah [Case No. 17,412]. The reasoning of Mr. J. Fox in the case last cited seems quite unanswerable, and his construction of the law is sustained, as he justly observes, by the provisions of sections 4559, 4560, and 4561, which in substance require the consul, when satisfied, on the report of inspection, that the vessel has been sent to sea unsuitably provided in any essential or important particular, by neglect or design, and not through mistake or accident, to discharge such of the crew as desire it, and to exact three months' extra pay in addition to their wages.

From the foregoing it will be seen: 1. That the ancient rule that freight is the mother of wages did not apply to cases where the voyage was lost, or freight not earned, through the act of the master or owner. 2. That the statute requiring three months' extra wages to be paid to the crew whenever the vessel was sold in a foreign country was held not to apply to sales ren-

[3] As to lien of mariners on vessel, see the following cases: The Grand Turk [Case No. 5,683]; The Mary [Id. 9,186].

dered unavoidable by an imperious necessity for which the master or owner is not responsible. 3. Conversely, where the sale has been occasioned by the fault of the owner, as where the vessel was unseaworthy at the commencement of the voyage, the extra pay will be due notwithstanding the statute, which provides that "no payment of extra wages shall be required upon the discharge of any seaman in cases where vessels are wrecked or stranded or condemned as unfit for service." Rev. St. § 4583.

But it is urged that the case at bar is covered by the provisions of section 4526. That section enacts that "in cases where the service of any seaman terminates before the period contemplated in the agreement, by reason of the wreck or the loss of the vessel, such seaman shall be entitled to wages for the time of service prior to such termination, but not for any further period." It is insisted that this provision is explicit, imperative, and controlling. But this language is no more explicit or comprehensive than that of section 4583, under which it was held, as we have seen, by Mr. J. Fox, that ship-owners were not exonerated from liability for extra wages when their ship was lost or condemned on account of their own fraud or willful negligence. "When we consider," says Mr. J. Fox, "the nature of the seaman's case as construed by the courts of this country, that the law implies a seaworthy ship on the part of the owner, and that wages were always recoverable by the sailor if, by the neglect of the master or owner, the freight of the ship was lost, and also remember the construction given by the courts to the act of 1803, that owners were exonerated from liability although, within the letter of the act, where vessels were sold because the damage she had sustained from the perils of the sea had rendered her sale necessary within the meaning of the maritime law, but were held accountable for extra wages if the vessel was condemned and sold for unseaworthiness at the commencement of the voyage, I cannot but think that a literal, strict construction of the exemption provided for by section 4583 was not the intention of congress, but that it was rather its purpose only to exonerate the master and owner from this liability when the enterprise is determined by a loss or condemnation of the vessel for which her owners are not directly responsible by their own neglect." The Wenonah, supra.

It is urged by the advocate for respondent that this decision only applies to cases where fraud or negligence is directly attributable to the owners, and not merely to the master. Such, undoubtedly, was the case before the court. But the reasoning of the learned judge, as well as the principles of the maritime law, do not recognize any such distinction. "The maritime law," observes Mr. Ch. Kent, "very equitably distinguishes between the cases in which a seaman's services are not rendered in consequence of a peril of the sea and in which they are not rendered by reason of some illegal act or misconduct or fraud of the master or owner interrupting and destroying the voyage. In the latter case the seamen are entitled to their wages, and the rule of the French ordinance is just and reasonable." The Marine Ordinance (liv. 3, tit. 4, art. 7) provides that where the voyage is broken up, retarded, or prolonged by the act of the master or owners, they will be responsible to the seamen for their damages. On this article Vahn observes that "if the breaking up or the retarding or prolongation is caused by the act of the master he shall indemnify the crew, for which indemnification the owners also are bound as responsible for the acts of the master." 1 Vahn, Com. p. 700. And this is but an illustration of the general rule of the maritime law by which the owners were responsible for the acts of the master, as well ex delicto as ex contractu. Ord. de la Marine, liv. 2, tit. 8, art. 2. If, then, the owners would under that law, and by a just construction of section 4583, Rev. St., be responsible to seamen for their wages and extra wages in cases where the freight of the voyage is lost by the fault of the master, is section 4526 to be construed as restricting that right in all cases of the wreck or loss of the vessel to the wages due at the time of the disaster?

It is evident, from the terms of section 4526 and the section which precedes it, that their principal object was to abolish the ancient rule of the sea which made the right to wages depend upon the earning of freight by the vessel. Section 4525 so enacts in terms. The succeeding section provides that in case of wreck and consequent termination of the seaman's service he shall be paid up to the time of such termination, but not for any further period. We have already seen that by the maritime law the owner was liable for the faults of the master as for his own. Did the statute intend to modify this rule, and pro tanto take away rights from the seaman which under the maritime law, the rigor of which they were mitigating, he would have possessed? If so, we can only gather this intent by construing the statute according to its very letter. And yet we have seen that in the construction of analogous statutes language equally explicit and comprehensive has been held to be subject to exceptions plainly required by justice or the general rules of law. Even with respect to the section under consideration it is not denied that an exception must be admitted in cases where the owner is personally in fault. If so, why not also where the fault is that of the master, for whose acts the owner is responsible? The more rational and just view of the intention of congress would seem to be that the two sections were intended to enlarge and not to diminish the rights of the seaman.

That so far as the rule of the maritime law which made the right to wages dependent on the earning of freight, that rule was to be abolished or so far modified as to allow him to recover wages for the period of his actual service. But the ancient rule was not to be altered to his disadvantage, and that where by that rule he was entitled not only to his wages earned but to an indemnity for the breaking up of the voyage, his rights were to be preserved intact. All the statutory provisions on this subject would thus be made consistent and harmonious. The seaman would not be entitled to wages where the voyage or vessel is lost by force majeure, except for the service already performed. But extra wages will be payable whenever the failure to earn freight or the breaking up of the voyage is caused by the acts of the master or owner. This construction harmonizes also with the principle enforced in section 4561. That section provides, as we have seen, that the seaman may be discharged, and three months' extra pay be allowed him, whenever, on the report of inspectors, the consul is satisfied that the vessel was sent to sea unprovided, in any important or essential particular "by neglect or design." This neglect or design may have been on the part of the owner or the master. In either case the extra wages are due. On the whole, my opinion is that the exceptions should be overruled.

But it is proper to observe that on the facts set forth in the libel it would seem highly probable that the respondent may set up the provisions of the act of March 3, 1851 [9 Stat. 635], in discharge of his liability. That liability is created by the general rule of the maritime law which renders the owner liable for the acts of the master, and it has been attempted in this opinion to show that that has not been altered by section 4526 of the Revised Statutes. But to this liability the maritime law attached the important qualification that the owner might discharge himself by abandoning the vessel and freight. Ord. de la Marine, liv. 2, tit. 8, art. 2. The act of March 3, 1851, adopts and incorporates into our law the same qualification. Section 3 of that act enacts that "the liability of the owner or owners of any ship for any embezzlement, etc., * * * or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned or incurred without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners respectively in such ship or vessel and her freight then pending." Under this section it has been held by the supreme court that it was the intention of congress to adopt the rule of the maritime law so far as relates to the owner's liability for the torts of the master and to provide that if the vessel and freight be totally lost the owners are entirely discharged. It may be inferred, from the allegations of the libel, that the loss of freight and vessel in the case at bar were nearly if not quite total. It is probable that the vessel was sold for not more than sufficient to pay the wages of the seamen up to the termination of the voyage. These wages have been paid. The owner's further liability must be restricted to any sum obtained on the sale, over and above the payments so made to the crew, not exceeding in amount three months' extra pay. 1 Low. 171 [Hoffman v. Yarrington, Case No. 6,580].