IN MAY TERM, 1846.

---

## COSTIGAN *vs.* THE MOHAWK AND HUDSON RAIL-ROAD CO.

Where one contracts to employ another for a certain time at a specified compensation, and discharges him without cause before the expiration of the time, he is in general bound to pay the full amount of wages for the whole time.

*So held* where the party was employed as superintendent of a rail-road for one year at a salary of $1500, and remained without employment during the whole period subsequent to his discharge, having given notice to the company that he was ready to continue in its business.

But in a suit for the stipulated compensation, the defendant may show in diminution of damages that after the plaintiff had been dismissed, he had engaged in other business. *Per* BEARDSLEY, J.

So it may be shown in reduction of damages that employment of the same general nature as that from which he had been dismissed, and to be carried on in the same locality, had been offered to the plaintiff and refused by him; but not a different kind of employment, or business to be conducted at another place. *Per* BEARDSLEY, J.

But the opportunity to be so employed will not be presumed, but must be affirmatively shewn by the defendant.

The *onus probandi* rests on the party asserting an affirmative fact, not on him who denies it.

Between the wrongdoer and the party injured, the presumptions respecting disputed facts are with the latter.

VOL. II.*       [609]       77

The novelty of a particular action or defence, where the facts on which it is founded are of common occurrence, is a strong argument that it cannot be upheld. *Per* BEARDSLEY, J.

MOTION on the part of the plaintiff to set aside the report of a sole referee. The action was assumpsit on a contract by which the defendants agreed to employ the plaintiff to serve them as superintendent of their rail-road.

The case proved was as follows: the defendants employed the plaintiff to superintend their rail-road for one year, from May 1st, 1843—at a salary of $1500 for the year, together with the use of a dwelling house worth $150 per annum. He commenced the service and continued in the employment until July 1st of that year, when he was dismissed by them without cause. Upon this he gave them notice that he was ready to proceed and perform his contract, and that he should claim his salary for the entire year, according to the agreement. He was not, however, allowed to go on with the business, and remained wholly unoccupied for the residue of the year, although at all times ready to serve according to his contract.

The referee reported $402,93 to be due the plaintiff; which was arrived at by allowing him $625 on account of salary, and $62,50 for being deprived of the house, and deducting $284,59 which had been paid. He was of opinion that three months was a reasonable time for the plaintiff to find other employment, and accordingly allowed him the amount which would have been due for five months' services

*N. Hill Jr.*, for the plaintiff. 1. The plaintiff is *prima facie* entitled to the stipulated compensation for the whole time. The cases in England are decisive upon the question. (1 *Chitt. Gen. Pr.* 81; *Gandell* v. *Pontigny*, 4 *Camp.* 375; *Pagani* v. *Gandolfi*, 2 *Carr. & P.* 370; *Beeston* v. *Collyer, id.* 607; 12 *Moore*, 552, and 4 *Bing.* 309, *S. C.*; *Fawcett* v. *Cash*, 5 *Barn. & Adol.* 904; *and see Bird* v. *Boyd*, 4 *McCord*, 247.) The cases of *Shannon* v. *Comstock*, (21 *Wend.* 457,) and *Heckscher* v. *McCrea*, (24 *id.* 304,) are not in conflict with this rule, for in the first, the only principle decided was that in an action on a contract for

Costigan *v.* The Mohawk and Hudson R. R. Co.

transportation the damages are not *necessarily* the amount agreed to be paid; and in the other, which was an action by a ship owner, for *deficient freight*, it was shown that other goods were offered to be laden on board, and all that was determined was that in such a case the damages should be reduced.

2. The *onus* of showing that the plaintiff could have obtained other employment, rested upon the defendants. There is no *presumption* that one can obtain employment in superintending a rail-road at $1500 a year. If a minister of. the gospel should be dismissed without cause, and in violation of a contract, is there a presumption that he could obtain other like employment in three months? The referee has determined that the defendant could find employment at the same rate in three months. This is not usually attainable, and is not to be presumed. If he had decided that he might have obtained employment as a common laborer at the rate paid for such service, it would have been more reasonable, for the demand for common labor is constant and uniform, but the business in question is peculiar, and the call for it limited. The defendant was not bound to show that he had sought employment and could procure none. The burthen of proving a fact rests with him who asserts it, and who would avail himself of it. The defendants set up that the plaintiff was wilfully out of employment; but idleness is a vice, and a dereliction of duty is never presumed. (*Starr* v. *Peck*, 1 *Hill*, 272.) In *Sill* v. *Thomas*, (8 *Carr. & Payne*, 762,) an action for an attorney's bill was defended on the ground that the plaintiff had not communicated to his client an advantageous offer of compromise, but the court held that it was to be presumed that the communication was made until the contrary was shown. Again, every presumption should be made against a wrongdoer. (*Armory* v. *Delamirie*, 1 *Str.* 505.) The *onus probandi* is frequently adjusted upon considerations relating to the facility which one party has over the other of proving the disputed fact. (*Greenl. Ev.* 90, § 79; 1 *Gall.* 498.) If, in fact, situations such as the plaintiff had held were obtainable, it might easily have been shown by the defendants; out if the plaintiff had made many-applications and failed, it

might still have been urged that the fact that no opportunity of employment existed had not been proved. On the other hand, one opportunity shown by defendants to exist of which they had notified the plaintiff would have proved their case.

*M. T. Reynolds*, for the defendants, relied upon *Shannon* v. *Comstock* and *Heckscher* v. *McCrea, cited supra.* The measure of damages is the loss that the party has really sustained; and if the plaintiff could remain idle and recover the whole amount of salary, upon the same principle if he had left without leave or a valid reason the defendants could have ceased using their rail-road and recovered from him the year's profits. It is not necessary to contend that the plaintiff could have obtained employment as superintendent of a rail-road. There were many branches of industry open to him; and even if it had been shown that he could find no employment he is not entitled to the same compensation, for a life of ease and enjoyment with leisure for mental improvement, which he would have earned in a laborious occupation. Suppose the engagement had been for the plaintiff's life; on the principle urged he would have been entitled to a pension equal to full pay as long as he lived. Slight evidence changes the *onus.* The salary which the plaintiff contracted for is presumptive evidence that he is a man of talent and acquirements. Such a man can always command employment.

*By the Court,* BEARDSLEY, J. As a general principle, nothing is better settled than that upon these facts the plaintiff is entitled to recover full pay for the entire year. He was ready during the whole time to perform his agreement, and was in no respect in fault. The contract was in full force in favor of the plaintiff although it had been broken by the defendants. In general, in such cases, the plaintiff has a right to full pay. The rule has been applied to contracts for the hire of clerks, agents and laborers, for a year or a shorter time, as also to the hire of domestic servants, where the contract may usually be determined by a month's notice, or on payment of a month's wages.

The authorities are full and decisive upon this subject. (*Chit. on Cont. 5th Am. ed.* 575 *to* 581; 1 *Chit. Gen. Pr.* 72 *to* 83; *Browne on Actions at Law,* 181 *to* 5, 504, 5; *Beeston* v. *Collyer,* 4 *Bing.* 309; *Fawcett* v. *Cash,* 5 *Barn. & Adol.* 904; *Williams* v. *Byrne,* 7 *Adol. & Ellis,* 177; *French* v. *Brookes,* 6 *Bing.* 354; *Gandell* v. *Pontigny,* 4 *Camp.* 375; *Robinson* v. *Hindman,* 3 *Esp.* 235; *Smith* v. *Kingsford,* 3 *Scott,* 279; *Smith* v. *Hayward,* 7 *Adol. & Ellis,* 544.) (*a*) In no case which I have been able to find, and we were referred to none of that character, has it ever been held or even urged by counsel, that the amount agreed to be paid should be reduced, upon the supposition that the person dismissed might have found other employment for the whole or some part of the unexpired term during which he had engaged to serve the defendant. And yet this objection might be taken in every such case, and in most of them the presumption would be much more forcible than in the case at bar. The entire novelty of such a defence affords a very strong if not a decisive argument against its solidity. (*The Duke of Newcastle* v. *Clark,* 8 *Taunt.* 602.) Nor do I find any case in which it was proved that other employment was offered to the plaintiff after his dismissal, and that his recovery was defeated or diminished because he refused to accept of such proffered employment.

It has, however, been held, and rightly so, as I think, that where a seaman hired for the outward and return voyage, was improperly dismissed by the captain before the service was completed, a recovery of wages by the seaman, for the whole time, was proper, deducting what he had otherwise received for his services after his dismissal and during the time for which his employer was bound to make payment. (*Abbott on Ship.* 4th *Am. ed.* 442, 3; *Hoyt* v. *Wildfire,* 3 *John.* 518; *Ward* v. *Ames,* 9 *id.* 138; *Emerson* v. *Howland,* 1 *Mason,* 51, 2.)

And upon the same principle, where a merchant engages to

(*a*) The rule of damages against the employer for the breach of a contract to perform mechanical work *by the piece* is different. (*See Clark* v. *Marsiglia,* 1 *Denio,* 317.)

furnish a given quantity of freight for a ship, for a particular voyage, and fails to do so, he must pay dead freight, to the amount so agreed by him, deducting whatever may have been received from other persons, for freight taken in lieu of that which the merchant had stipulated to furnish. (*Abbott*, 277, 8; *Puller* v. *Staniforth*, 11 *East*, 232; *Puller* v. *Halliday*, 12 *id.* 494; *Kleine* v. *Catara*, 2 *Gall.* 66, 73.) Upon this principle, as I understand, the case of *Shannon* v. *Comstock*, (21 *Wend.* 457,) was decided. The defendants there engaged to pay the plaintiffs fifty-five dollars for the transportation of a certain number of horses, on the canal, from Whitehall to Albany, but failed to comply with their agreement. An action was thereupon brought to recover the fifty-five dollars, and the contract and its violation having been shown, " the defendants offered to prove that the damages sustained by the plaintiffs did not exceed five dollars." What facts were offered to be given in evidence in order to establish this result, cannot be collected with absolute certainty, from the report of the case, but it does not appear that any objection was made to the form of the offer, and the report shows that *the evidence was objected to and excluded.* I infer then, that the offer of the defendants was to show, by competent evidence, that the plaintiffs took other freight on board their boat instead of the horses, so that their loss, by the violation of this contract, was but small. Upon the ground already stated, that loss was the amount the plaintiffs were in law and justice entitled to recover. So this court held, and as the evidence had been rejected in the court below, the judgment was reversed. The views of the chancellor, as stated in the case of *Taylor* v. *Read*, (4 *Paige*, 571,) are to the same effect, and the propriety of the rule seems to me too apparent to admit of doubt.

In these cases it appeared, or was offered to be shown, that the plaintiffs had in fact performed services for others, and for which they had been paid, in lieu of those they had bound themselves to perform for the defendants, and which the latter had refused to receive. In *Heckscher* v. *McCrea*, (24 *Wend.* 304,) the court went a step further. That case

arose in the superior court of the city of New-York, where McCrea was plaintiff. It was an action for dead freight which the plaintiff claimed under a special contract with the defendants. They had agreed with the plaintiff to furnish a given number of tons of freight, at a certain price, for a return cargo from China to New-York, in the plaintiff's ship. A part of the freight was furnished by the defendants, as agreed, but they fell short about one hundred and thirty tons. The agents for the defendants at Canton, where the ship then was, having no more freight to put on board for the defendants, offered to supply the deficiency, from the goods of other persons in their hands, which the agents were authorized to ship to the United States: such shipment to be made at a reduced, although at the then current rate, but with an express agreement that receiving this freight on such reduced terms should not interfere with the original arrangement between the parties to this suit. This offer was declined, and to the extent of this deficiency the ship came home empty. The action was to recover for this deficient freight. The court held that the plaintiff should have taken the freight offered, although at a rate below what the defendants had agreed to pay: that so far it would have relieved the defendants without doing injury to the plaintiff, and by which about two thirds of the amount now claimed might have been saved.

In all the cases I have cited, the facts on which the delinquent party sought to bring the amount to be recovered, below the sum agreed to be paid, were proved or offered to be proved on the trial. Nothing was left to inference or presumption, and it was virtually conceded that the *onus* of the defence rested on the defendant. They are also cases in which the plaintiffs had either earned and received money from others, during the time when they must have been employed in fulfilling their contract with the defendants, or in which they might have earned it in a business of the same character and description with that which they had engaged with the defendants to perform.

The principles established by the cases referred to, seem to me just, and although I have found no case in which they have

been applied to such an engagement as that between these par ties, still I should have no hesitation, where the facts would allow it to be done, to apply them to such a case as this.

But first of all the defence set up should be proved by the one who sets it up. He seeks to be benefitted by a particular matter of fact, and he should therefore prove the matter alleged by him. The rule requires him to prove an affirmative fact, whereas the opposite rule would call upon the plaintiff to prove a negative, and therefore the proof should come from the defendant. He is the wrongdoer, and presumptions, between him and the person wronged, should be made in favor of the latter. For this reason therefore the *onus* must in all such cases be upon the defendant.

Had it been shown, in the case at bar, that the plaintiff, after his dismissal, had engaged in other business, that might very well have reduced the amount which the defendants otherwise ought to pay. For this the cases I have referred to would furnish sufficient authority. But here, it appears that the plaintiff was not occupied during any part of the time from the period of dismissal to the close of the year.

Again, had it been shown on the trial, that employment of the same general nature and description with that which the contract between these parties contemplated, had been offered to the plaintiff, and had been refused by him, that might have furnished a ground for reducing the recovery below the stipulated amount. It should have been business of the same character and description, and to be carried on in the same region. The defendants had agreed to employ the plaintiff in superintending a rail-road from Albany to Schenectady, and they cannot insist that he should, in order to relieve their pockets, take up the business of a farmer or a merchant. Nor could they require him to leave his home and place of residence, to engage in business of the same character with that in which he had been employed by the defendants.

I think we cannot, as between these parties, presume that the plaintiff might have been so employed and that he refused; and therefore the report, in my judgment, should be set aside. If

the defendants can prove that such employment was offered, it may reduce the amount otherwise recoverable; but if such proof shall not be given, the report, I think, should be for the salary at fifteen hundred dollars a year, and rent at one hundred and fifty dollars, and for a full year, deducting the amount which may have been paid towards the same.

Report set aside.