Denio, J.
I am of opinion that the principles of the provisions of the Bevised Statutes relating to the right to recover the mesne profits of lands, after a judgment in ejectment, remain in force, but that the form of the remedy is that prescribed by the Code. (2 R. S., 310, §§ 44-54.) By these provisions the former action of trespass for mesne profits was abolished, and they were to be recovered under a suggestion, to be entered upon the record of the judgment in ejectment. This paper was to be substantially like a declaration in assumpsit for use and occupation; and the defendant was to plead to it, and the case was then to proceed to trial and judgment, substantially as in actions commenced in the ordinary way. Certain rules are given as to the effect of the judgment in ejectment as evidence, and as to the measure of the plaintiff’s right of recovery. As to the latter, it is to be “ the amount of the mesne profits received by the defendant since he entered into possession of the premises,” subject to certain qualifications relating to improvements put upon the premises by the defendant, and to a limitation as to the time which shall be embraced in the recovery, which is fixed at six years. From this it will be seen that the regulations relate partly to the right which one who has recovered in ejectment has to a *492 recompense for the withholding of the premises, and in part to the formal steps by which that right is to be asserted. There is no mention made of the subject of mesne profits, or the mode of recovering them, in the Code. The general scope of that system is to reduce the various existing ordinary remedies into one, which is denominated a civil action (§§ 1-6, 69); and accordingly, all forms of pleading theretofore existing are abolished (§ 140), and all statutory provisions inconsistent with the act are repealed; and it is declared that all rights of action secured by existing laws, may be prosecuted in the manner provided by the act. (§ 468.) The title of a party, who had recovered the possession of land by ejectment, to a recompense for the use and occupation of it, while he had been kept out by the wrongful act of the defendant, is a right of action; and the remedy for enforcing it, both before and under the Revised Statutes, was not by any summary process, but by action regularly prosecuted according to the forms then in use, though these forms, according to the Revised Statutes, embraced certain peculiarities differing from other actions. When, therefore, the Code came to unite the various classes of actions into one, under which all rights of action were to be enforced, and to abolish all peculiarities in the forms of pleading, the remedy for mesne profits naturally fell into the arrangement, and became the subject of a civil action under the new system; and the peculiar method of commencing it by suggestion became inapplicable. In opposition to this view, section 471 has been relied on by the defendant’s counsel. It declares that the second part of the Code shall not affect any statutory remedy not theretofore obtained by action; nor any existing statutory provisions relating to actions, not inconsistent with the act, and in substance applicable to the actions thereby provided. The first branch of the enactment relates to the various summary remedies provided by statute, as to which the forms of regular actions were inapplicable. These proceedings are very numerous, and as they could not properly be brought within the purview of the Code they were not interfered with. The remedy for mesne profits *493 being one which was formerly prosecuted by action, does not fall within the language. But the provisions of the Bevised Statutes respecting mesne profits fall within the second branch of the section, being provisions relating to actions: and hence, so far as they consist with other provisions of the Code, they are untouched; but so far as they interfere with them they are repealed. Thus, the direction to proceed by suggestion is superseded by the prescription of the Code, by which rights of action are to be prosecuted by summons and complaint; and the subsequent pleadings, which the Bevised Statutes had provided for such cases, are superseded by the general rules of pleading which the Code furnishes. But those portions of the Bevised Statutes which relate to the evidence, and to the principles of the recovery and its extent, are in substance applicable to the new action, and are therefore unaffected by the Code.
The complaint in the present case contains sufficient averments to show the right of the plaintiff to recover the mesne profits of the mill. Its general scope and apparent intention, taken in connection with the demand of judgment, prove that the object sought was a recovery for the use and occupation of the mill during the period the plaintiff had been deprived of the possession. It contains the substance which would have been stated in a suggestion under the Bevised Statutes; and, if it should be thought that I am in error in supposing that the proceeding is not now a supplement to the action brought to recover the possession of the land, yet, as no objection upon that point was taken in the answer, it would be the duty of the Supreme Court, by an amendment under section 173, to correct the mistake in the matter of form. It could direct that the complaint be annexed to the judgment roll, and be made to assume the form of a suggestion. All objections not taken in the answer or by demurrer are considered as waived, unless they relate to the jurisdiction of the court, or the complaint fails to state a cause of action. (§ 148.)
Assuming the action to be property brought for the mesne profits during the time the defendant was in possession, the *494 objections interposed by the defendant, which assume that it was simply an action in the nature of trespass, are not well taken; and the only remaining question of any moment, is whether a proper rule of damages was adopted at the trial.
If the plaintiff had been the general owner of the premises, or if the general owner had been a stranger to the action, the rule prescribed by the Revised Statutes would have been the one to be applied. But the defendant was the general owner, and the plaintiff's intestate was the lessee for a term shortly to expire; and, by the terms of the lease, he was to be at the expense of carrying on the mill, and of a portion of the repairs, and was to render to the defendant, by way of rent, two-thirds of the earnings. The actual interest of the plaintiff, as the personal representative of the lessee, was the value of the lease for the residue of the term. Under such circumstances, to give the plaintiff the full value of the use of the premises as though he were the absolute owner would be manifestly unjust. It does not appear that the plaintiff contended for, or that the judge gave any countenance to such a rule. Upon the concession of all parties, the limited interest of the plaintiff and the fact that the defendant, as owner and lessor, had an interest in the profits to arise from the use and enjoyment of the premises,, were circumstances to be taken into account; but the court held that the plaintiff was entitled to the clear one-third of the earnings, without any deduction for the expense of running the mill. By the argument submitted, this ruling is defended on the assumption that the defendant is punishable as a wrong-doer, and should be denied an allowance for officiously carrying on the mill, upon the principles established in Costigan v. The Mohawk and Hudson Railroad Company (2 Denio, 609), and the cases in which it has been held that a trespasser- expending labor and money upon the personal chattels of another does not thereby acquire a pro-' perty in such chattels. I do not think these cases applicable. In Gostigan's case the contract was for the plaintiff’s personal services for a stated period, in a peculiar employment, and he having been dismissed without cause, and there being no *495 evidence that he had obtained other employment, he was held entitled to the whole compensation promised. Prima facie his remaining idle was the natural result of the defendant’s breach of contract. There' is no such feature in this case. The labor of carrying on the mill was not a service which was necessarily to be performed by the lessee personally. He was to be at the expense of performing it, but might do it by other labor than his own, if he had been living at the time of the defendant’s entry. But at that time the labor could only be done by others at the expense of his estate. This, in law, would cause a pecuniary deduction from the value of the lessee’s share of the earnings of the mill. The case cited evidently has no application to the present question. The doctrine that one cannot make title to another’s property by his own wrong, arises out of a general principle respecting the ownership of property. The doctrine frequently effects moral justice between the parties; but it is not so much on that account as because any other rule would be hostile to just ideas of the exclusive dominion which every one has over his own property that the rule obtains. There cannot be deduced from it a general rule that a wrong-doer is ordinarily to pay more that the injured party has suffered, by being deprived of an allowance which would otherwise be equitable between the parties.
The Revised Statutes have prescribed as the measure of damages in this class of cases the same rule which would prevail in assumpsit for use and occupation. The compensation is to be adjusted as upon contract, and not upon the footing of a tort. This would be plainly so, if the plaintiff were the general owner, and the defendant, before his entry, was a stranger to the land. The principle is the same in the present case where the plaintiff has only a limited interest, the residue of the right being in the defendant. As the defendant would be chargeable with the fair value of the use and occupation, if the plaintiff’s interest was integral, he is chargeable, in the present case, only with the value of the interest of which he has deprived the plaintiff by his illegal entry and possession. It follows that the principle upon which the damages were *496 adjusted at the circuit was erroneous; and the judgment must, for that reason, be reversed.
Seldeet, J., took no part in the decision; all the other judges concurring,
Judgment reversed and new trial ordered.