THE PEOPLE OF THE STATE OF NEW YORK, PLAIN-
TIFFS IN ERROR, v. HENRY F. MORING, DEFENDANT IN
ERROR.

*Brokers—State Tax on Sales—Statute of 1866—Construction.*

IN the month of May, 1866, the Defendant was indicted by
the grand-jury of the county of New York, for selling as a broker
60,000 bags of coffee, which had been imported from Java, with-
out having executed a bond, as required by the act of the Legis-
lature of the State of New York, passed April 23d, 1866. The
facts are more fully stated in the opinion of the Court.

*J. H. Martindale*, Attorney-General, and *George Bliss, Jr.*, for
the Plaintiffs in Error.

*Wm. M. Evarts* and *Waldo Hutchings* for the Defendant in
Error.

HUNT, J.—On the eleventh of April, 1846, the Legislature of the
State of New York passed an act entitled " An act in relation to
duties on goods sold at public auction, and to the bonds of auc-
tioneers." This act provided that all goods which should be ex-
posed to sale at public auction, should be subject to duties at cer-
tain rates specified. The act distinguished between goods of
foreign and domestic production, and also between the kinds of
goods, by placing different rates of duties upon them. It was pro-
vided in the act that the duties should be calculated upon the sums
for which the articles should be struck off, and that they should in
all cases be paid by the person making the sale. Every person
acting as auctioneer was, by the same act, required to file a bond
conditioned for rendering faithful accounts, and for the payment of
the duties thus required. A failure to give this bond rendered the.
party liable to a penalty, and to an indictment for a misdemeanor.

On the thirteenth of April, 1866, the Legislature of the State of
New York passed another act, entitled " An act to amend chapter

sixty-two of the laws of 1846, and other acts additional to the same."
Chapter 62 of the laws of 1846 was the act I have referred to.

The act of 1866, in effect, amended the act of 1846 by inserting
after the words " sold at public auction," the words, " or offered for
sale by sample, or otherwise by brokers." It imposed the fees or
duties, upon sales of the articles therein mentioned, when sales
were made by brokers, in the same manner and to the same
extent as when made by auctioneers. A further section required
the broker to make and file a bond of the same character with that
required of the auctioneer, and subjected him to the same penal-
ties in case of a failure to do so.

The Defendant is a merchandise broker in the city .of New
York, and on the 13th of May, 1866, he was indicted by a grand-
jury of that city and county, for selling as a broker 60,000 bags
of imported coffee, without having executed the bond required
by the act last mentioned, and for neglecting to pay to the State
of .New York the duties required by said act to be paid upon
such sale. The Defendant demurred to the indictment. The
Court of General Sessions, in which the indictment was found,
sustained the demurrer, and gave judgment for the Defendant.

Upon appeal to the General Term of the Supreme Court of the
First District, the judgment of the General Sessions was affirmed.
From this judgment of affirmance the People, as Plaintiffs in
Error, appeal to this Court.

The demurrer was sustained in the Court below upon the
ground that the act of the Legislature of New York in question,
was repugnant to the constitution of the United States, and void.
It was also held to be in violation of the provisions of section 13
of art. 7 of the constitution of the State of New York, and to be
void for that reason. I shall examine these questions only, dis-
regarding some defects and omissions in the framework of the
indictment, which, if insisted upon, might be the occasion of
technical embarrassment.

The Defendant claims the law in question to be invalid, as
being repugnant to that provision of the constitution of the United
States which authorizes Congress " to regulate commerce with

foreign nations, and among the several States, and with the Indian tribes," and also with that provision of the same instrument which declares that "No State shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws" (Art. I., § 8, sub. 3; § 10, sub. 2).

The exaction from the broker of the fees or duties required by the law of 1866, now before us, is claimed by him to be an interference with commerce, and to be a tax or duty upon imports, and so in violation of the constitutional provisions quoted.

These provisions of the United States constitution have been the subject of frequent consideration in the Federal Courts; and in seeking a conclusion in the present case, we are not without the aid of great landmarks to guide us in our way. An examination of the principles of the adjudicated cases will assist us in reaching a correct result in the case before us.

The case of Gibbons *v.* Ogden (9 Wheaton R. 1) involved the validity of the act of the Legislature of the State of New York granting to Livingston and Fulton the exclusive navigation of all the waters within the jurisdiction of that State, with boats moved by fire or steam, for a term of years. These acts were adjudged to be in violation of the constitutional provision authorizing Congress to regulate commerce among the States, so far as they prohibited vessels licensed according to the laws of the United States for carrying on the coasting trade, from navigating the said waters by means of fire or steam. In discussing the question, what is this power of regulation, Chief-Justice Marshall says: "It is the power to prescribe the rule by which commerce is to be governed. This power, like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than are prescribed in the constitution. . . . . The wisdom and discretion of Congress, their identity with the people, and the influence which their constituents possess at elections, are, in this as in many other instances—as that, for example, of declaring war—the sole restraints on which they have relied to secure them from its abuse.

They are the restraints on which the people must often rely solely in all representative governments."

This power to regulate commerce is exclusive in Congress, and cannot be exercised by the States (p. 199). Still, there remain to the States the rights so important in their effects upon commerce, and so difficult to distinguish from its regulation, of framing and executing inspection laws, quarantine laws, health laws of every description, and a regulated system of pilotage (pp. 203, 207).

In the case of Brown *v.* The State of Maryland (12 Wheaton R. 419), the leading opinion was delivered by the same learned Judge; and the Court held that an act of the Legislature of the State of Maryland, requiring all importers of foreign goods by the bale or package, and other persons selling the same by wholesale, bale, or package, to take out a license, for which they should pay fifty dollars, and in case of neglect, subjecting them to certain forfeitures and penalties, was repugnant to the section of the United States constitution already quoted, in reference to regulating commerce, as well as to that forbidding the laying of duties or imposts.

The reasoning of the Court is briefly this': An impost or duty on imports is a custom or tax levied on articles imported, or brought into a country. Usually, and to prevent evasions of the law, this right is exercised before the importer is permitted to take possession of the goods. It is none the less an impost, however, when the levy is delayed until the goods are landed. The power to tax immediately upon landing is the same as the power to tax while entering the port. There is no difference between the power to prohibit the sale of an article and a power to prevent its introduction into the country. No goods would be imported if none could be sold. The same power which imposes a light duty may impose one amounting to prohibition. When the importer has so acted on the thing imported that it has become incorporated and mixed up with the mass of property in the country, it loses its distinctive character as an import, and becomes subject to the taxing power of the State; but while remaining the property of the importer, in his warehouse, in the original

form or package in which it is imported, a tax upon it is plainly a tax upon imports, within the prohibition of the constitution. A tax on the sale of an article imported only for sale is a tax on the article itself. I shall have occasion again to allude to certain distinctions contained in this opinion, which will be pertinent to the case in hand.

The three cases against the States of Massachusetts, Rhode Island, and New Hampshire, termed the "*License Cases*," are reported in 5 How. U. S. R. 504. It was there held that a law of Massachusetts, providing that no person shall presume to be a retailer of wine, brandy, etc., in less quantity than twenty-eight gallons, and that delivered and carried away all at one time, unless he is first licensed as a retailer of wine and spirits, and that the Commissioners shall not be required to grant such license when in their opinion the public good does not require it, was not inconsistent with any provision of the United States constitution, or any act of Congress under it.

The law of Rhode Island forbade the sale of rum, gin, brandy, etc., in a less quantity than ten gallons, although the brandy which was sold in this case was duly imported from France into the United States, and purchased by the party indicted from the original importer. The law of New Hampshire imposed a similar restriction, although in this case the article sold was a barrel of American gin, purchased in Boston, carried coastwise to Piscataqua, and there sold in the same barrel. These laws were also held to be valid within the provisions of the constitution and laws of the United States.

In these cases the leading opinion was delivered by Ch.J. Taney.

These decisions were placed upon the ground that, although the regulation of commerce with foreign nations and among the several States belonged exclusively to Congress, the regulation of the internal traffic of a State belonged to itself, free from any control or interference on the part of the Federal government.

The doctrine of Brown *v.* Maryland, that while goods were in the hands of the importer, in the shape in which they were introduced, and in which they were intended to be sold, they were

not subject to taxation, either by direct assessment or by requiring a license to sell, was reiterated.    The laws in question were held not to act upon the article until after it had passed the line of foreign commerce, and become a part of the general mass of the property of the State.

It was decided in Nathan *v.* The State of Louisiana (8 How. R. 73), that a tax imposed by a State upon all money or exchange brokers was not void for repugnance to constitutional power of Congress to regulate commerce; and this although the business of the Defendant Nathan was confined exclusively to the sale and purchase of foreign bills of exchange.

It was held to be a tax upon the business of the Defendant simply, upon his credit or his capital, and not a charge upon the commerce of the country.

The last case to which I shall refer is that of Almy *v.* The State of California (24 How. 169).    The Defendant Almy was indicted for a violation of a law of the State of California, which required a stamp of a certain value, expressing the amount of the duty, to be attached to any bill of lading for the transportation of gold or silver to any place without the State.    The Court held that this was substantially a tax on exports; that a bill of lading, or some similar document, was an invariable accompaniment of shipment, and that a tax upon the instrument was a tax upon the article itself.    They say : " The intention to tax the export of gold and silver, in the form of a tax on a bill of lading, is too plain to be mistaken."

The principles to be extracted from these cases are as follows :

1.  That the power of regulating commerce with foreign nations, and among the States, and the power of taxing imports or exports, belongs to Congress exclusively.

2.  That Congress has no power to interfere with the internal traffic of a State.    That authority is vested in the State alone.

3.  That imported property, while remaining in the hands of the importer in its original form, cannot be taxed by State authority.

4.  That when it leaves the importer's hands, and becomes in-

corporated with the general mass of the property of the country, it becomes subject to State taxation.

5. That taxation upon the right to sell in any form an article of import, intended for sale, or upon the necessary instrument of exporting an article intended for export, is taxation upon the article itself, and not permitted by the Federal constitution.

6. That the imposition by a State of a tax upon a particular kind of business is constitutional, although the subject-matter of the business related entirely to dealings with foreign countries.

Judged by these principles, I can discover no objection to the legislative acts now under discussion.

Since the year 1784 the Legislature of the State of New York has, from time to time, passed laws taxing the sales of goods by auctioneers. This has been the practice, both as to foreign and domestic goods (Laws 1784, 1 Greenleaf, 64; Laws 1792, 2 Greenleaf, 470).

The constitution of 1821 recognized this practice, and provided for the purposes to which the moneys thus received should be applied (§ 10, art. 7; see Laws 1824, ch. 47; Laws 1838, ch. 52; Laws 1846, ch. 62).

This taxation has been a valuable source of revenue to the State of New York, often reaching to a quarter of a million of dollars annually. During a period of eighty years this right has been unchallenged. The fact that no dispute has been raised upon this point for so long a period of time, is strong evidence that the right cannot be successfully disputed (See Ryan *v.* N. Y. C. R. R. Co., 35 N. Y. 210; Costigan *v.* M. & H. R. R. Co., 2 Denio, 609).

The right to tax sales by auction is fully recognized in Brown *v.* Maryland (supra). The learned Chief-Justice says: " So, if he sells by auction. Auctioneers are persons licensed by the State, and if the importer chooses to employ them, he can as little object to paying for this service as for any other for which he may apply to an officer of the State. The right of sale may very well be annexed to importation, without annexing to it also the privilege of using the officers licensed by the State to make sales in a peculiar way." And again: "It is true, the State may tax occu-

pations generally, but this tax must be paid by those who employ the individual, or is a tax on his business. The lawyer, the physician, or the mechanic, must either charge more on the article in which he deals, or the thing itself is taxed through his person. This the State has a right to do, because no constitutional prohibition extends to it." A tax on the occupation of an importer, he says, is prohibited by the constitution.

In Nathan *v.* Louisiana (supra), Justice McLean, in delivering the opinion of the Court, uses this language : " Under the law, every person is free to buy or sell bills of exchange, as may be necessary in his business transactions ; but he is required to pay the tax if he engages in the business of a money or an exchange broker. The right of a State to tax its own citizens for the prosecution of any particular business or profession within the State, has not been doubted. And we find that in every State money or exchange brokers, vendors of merchandise of our own or foreign manufacture, retailers of ardent spirits, tavern-keepers, auctioneers, those who practise the learned professions, and every description of property not exempted by law, are taxed."

The right to tax the proceeds of auction sales, when the articles sold are imported from foreign countries, is not within any of the prohibited principles heretofore stated as drawn from the decisions of the Federal Courts. It may be enforced without a violation of any of them. The importer may reship them to foreign countries if he desires. He may consign his goods to the interior, if he finds it to his interest to do so. He may sell them at his own counter or warehouse for cash or credit. He may exercise every conceivable act of ownership, without restraint or liability to taxation, with a single exception. If he resorts to the mode of a sale at public auction, the sale subjects the auctioneer to the payment of a duty upon the amount of his sales. It seems to me quite extravagant to maintain that this exception is an infringement upon the right to import, or that it imposes a tax upon the business of the importer.

I conclude that the long-existing laws of the State, imposing taxes upon sales by auctioneers, are valid. I am unable to per-

34

ceive that sales made by brokers stand upon any different footing. Neither the auctioneer nor the broker, so far as the present case shows, is a public officer, required to take an oath of office, and indictable at common law for failure to perform his duties.   Each is a quasi officer, required to give to the State a bond, with sureties, conditioned for the faithful performance of the duties of his office, and is by statute made liable to an indictment if he attempts to act without having given the required bond.   The one invites competition for the articles intended to be sold, by vivâ voce bidding at an assemblage of people.   The other invites competition by calling individually for the bids of those who desire to purchase the articles to be sold, or by receiving their bids at his own place of business.   Each is a middleman acting as agent both for a buyer and a seller.   The moment he ceases to represent each of these parties, he ceases to be an auctioneer or broker, and becomes a party on his own account, or an agent for a buyer only, or a seller only.   Each receives his compensation from the parties for whom he acts, and each is bound to pay the duties to the State. I can see no substantial difference between the vocation of a broker and that of an auctioneer, for the purposes of the question before us.   The duties imposed upon the sales of the latter have long been recognized by the laws of this State, as well as by the statements of the Federal Judges, as properly imposed. . I believe this recognition is due to the justice of the claim, and that the constitutional inhibitions which I have discussed could not at any time have been successfully urged against the collection of these duties.   The tax upon brokers' sales occupies the same ground, and, in my opinion, is legally chargeable under the law in question.   This demurrer, therefore, cannot be sustained on the ground that the law in question is repugnant to the provisions of the constitution of the United States.

It is said, again, that the act of the Legislature of the State of New York of the year 1866 is invalid, as being in violation of section 13, article 7, of the constitution of this State.   That section is as follows: "Every law which imposes, continues, or revives a tax, shall distinctly state the tax, and the object to

which it is to be applied; and it shall not be sufficient to refer to any other law to fix such tax or object."

It will be observed that the original act was passed in the year 1846, before the adoption of the constitution containing the present provision. No such provision was contained in the constitution of 1821. By article 7, section 10, of that instrument, all duties upon goods sold at auction were appropriated to the completion of the navigable waters of the State, and the payment of the debt contracted in the construction of the same. By the fifth amendment to the constitution of 1821, this appropriation of duties was determined, and the same were thereby restored to the " General Fund" of the State. There was thus a permanent and express appropriation of these duties when the act of 1846 was passed. The act of 1866 in question, merely made an addition to the subject-matter of the former law. It provided that sales of brokers should be placed in the same category, in regard to the payment of duties, as sales by auctioneers. It was simply an amendment of an existing law, valid in all its provisions. It may be doubted whether such an amendment can properly be termed the imposition or revival of a tax.

Again: I agree with the intimation of Judge Oakley, in The Sun M. Ins. Co. *v.* City of New York (5 Sandf. Sup. C. R. 10, 14), that this section was not intended to be applied to laws which imposed duties, fees, or excises on particular professions, classes of trade, or individuals, but that the same relates only to a general tax upon the property of the State. The section of the constitution immediately preceding, forbids the creation of a State debt, except under certain restrictions, and provides that the law authorizing the debt shall also provide for the imposition of a direct annual tax, to pay the interest and the principal within a specified time. This law is required to remain in force until the debt is paid or provided for. This section, I have no doubt, contemplates a general tax upon all the property of the State, and was not intended to be satisfied with, or to apply to, a local tax upon a particular section, or to a tax imposing fees or duties upon trades or individuals, although the same are direct taxes, equally

as if imposed upon the entire property of the State.    The section in question is applicable to the same class of taxation, and was never intended to reach a case like the present.    Hawkers' and pedlers' fees, canal tolls, railroad tolls, are all taxes in the enlarged meaning of that term, but, I apprehend, not within the meaning of that expression in the section of the constitution under consideration.

Judgment should be reversed, and judgment ordered for the People upon the indictment, with leave to the Defendant to withdraw his demurrer and plead to the indictment within twenty days.

All concur with Judge Hunt, that the act is not in conflict with the constitution of the State.

JOEL TIFFANY,
State Reporter.