## ALEXANDER OLDHAM v. F. W. KERCHNER.

*Contract—Breach of—Action for Damages—Measure of Damages—*
*Issues—Judge's Charge—Practice on Appeal.*

1. Where, on the trial of an action for damages for breach of contract, it appeared that the defendant, a judgment creditor of the plaintiff, had agreed with him that the judgment debt should be liquidated by the plaintiff's grinding a quantity of corn to be furnished by defendant, sufficient to pay off the debt, at eight cents per bushel of meal delivered to defendant, the plaintiff agreeing to grind all corn delivered to him under the contract at that price ; and that thereafter the defendant after delivering a portion of the corn had declined to deliver more and had collected the balance of the debt out of the plaintiff under execution ; *It was held,*

(1) That it was not error for the Court below to refuse to submit an issue to the jury,—"Was getting the payment of the judgment the defendant's *sole* inducement for making the alleged contract ?"

(2) That it was not error to refuse to instruct the jury " that the profits which plaintiff would have made if the contract had been fully carried out, are not the proper measure of damages ; that plaintiff is only entitled to actual damages, and having offered no proof of any such, is entitled to only nominal damages."

(3) Nor was it error to refuse to instruct the jury "that the contract was *nudum pactum,* or at least that it was so, if eight cents per bushel was a fair price for grinding."

2. In such case, upon an issue as to whether or not the causes of action alleged in the complaint were compromised and settled between the parties upon sufficient consideration, it was not error for the Court to charge "that the jury must say whether plaintiff agreed with defendant's attorney to surrender his right of action for the alleged breach of contract, and if he did so agree in consideration of receiving the forbearance on the execution, as testified to, then this was a sufficient consideration binding on plaintiff, and the jury must find the issue in the affirmative ; that a contract is the assent of two minds to the same thing in the same sense, and the jury must consider all the testimony on this point and say whether the plaintiff did so agree ; that the plaintiff was not barred from recovering in this action by reason of his agreement in regard to any matter other than the cause of action sued on, and if in the conversation with

OLDHAM *v.* KERCHNER.

said attorney, the plaintiff did not understand him as referring to the cause of action sued on, that they must find the issue in the negative."

3. In such case, the true measure of damages is the difference between the cost of grinding and the contract price; that the charge of the Court below to that effect is not erroneous for failing also to charge "that the actual loss sustained by defendant's breach of contract was the true measure of damages, and if the plaintiff after defendant's refusal to deliver corn, did receive from others employment for such part of his machinery as would have been occupied in performing his contract with defendant, or by reasonable effort might have received such employment, the profit that was or might have been thus made must be deducted from the profit he would have made had defendant performed his contract, in order to ascertain the actual damage," there being no evidence to which such a doctrine was applicable.

4. Where in an action for damages for breach of contract, the plaintiff proves a contract, its breach and the loss of certain profit resulting from the breach, the burden is on the defendant to prove anything in diminution of damages.

5. In this Court in a case on appeal the position of the appellee is strictly defensive; the judgment below is assumed to be right unless some specified error is shown; *Therefore,* in this action the plaintiff is not required to show from the case made out an appeal, that his claim was supported by evidence that his mill had not been so employed as to diminish his damages.

(*Bell* v. *Walker*, 5 Jones 43; *Spiers* v. *Halsted,* 74 N. C. 620; *Mace* v. *Ramsey,* Ib. 11; *Clements* v. *The State,* 77 N. C. 142; *Brinkley* v. *Swicewood,* 65 N. C. 626; *Hendrickson* v. *Anderson,* 5 Jones 246, cited, commented on and approved.)

(SMITH, C. J. *Dissenting.*)

CIVIL ACTION tried at January Special Term, 1878, of NEW HANOVER Superior Court, before *Moore, J.*

This was an action for damages for an alleged breach of contract, and the facts are sufficiently stated in the opinions delivered. There was a verdict for plaintiff, judgment, and appeal by defendant.

*Mr. D. L. Russell,* for plaintiff.
*Messrs. W. S. & D. J. Devane,* for defendant.

RODMAN, J.   The plaintiff being indebted to the defend-
ant by a judgment for about $2300, wrote to defendant on
29th April, 1871, who was a large dealer in corn and meal,
as follows:   Dear Sir—I am without means now, of paying
the Oldham, Denmark & Co. claims (alluding to said judg-
ment) and I propose to liquidate the claims with means at
my command, and they are these, viz., to grind all the
meal you want, on the following terms—for every 56 pounds
of good clean corn furnished, I will return 50 pounds of
bolted meal, sewed up in your sacks and delivered to your
store, (you deliver corn to mill,) and you credit O. D. & Co's
old account with eight cents per bushel.   Hoping this libe-
ral proposition may meet your approbation, I am, &c.
(Signed by plaintiff).

The defendant accepted this proposition as is shown by
his sending corn to plaintiff's mill and crediting plaintiff
with the price of the grinding according to its terms, until
September 1st, 1871, when he ceased sending corn to plain-
tiff's mill for about two weeks.   On the 20th of September,
the plaintiff wrote to defendant a second letter, which is not
material to be set out here, and on the next day the defend-
ant resumed sending corn to plaintiff's mill, and continued
to do so until October 15th, when he notified plaintiff that
he would not send any more corn, and demanded payment
of the balance due on the judgment, and issued execution
thereon, which was levied on the property of plaintiff.   The
plaintiff afterwards paid the said balance.   The defendant
sent no corn afterwards.

The defendant endeavored to prove that plaintiff had re-
leased him from liability on the contract above stated, but
the jury found against defendant upon that issue, and we
do not concern ourselves with it here.

The Judge presented several questions to the jury, and they found the contract to have been in substance:—

1. That defendant should deliver to plaintiff, corn to be ground, enough in quantity to pay off the said debt of plaintiff at eight cents per bushel of meal delivered to defendant, and plaintiff agreed to grind all corn delivered to him under the contract at that price, and upon the other terms of the contract, which are not material to be noticed here.

2. That the difference between the eight cents per bushel which defendant agreed to pay for grinding, and the actual cost of grinding, to the plaintiff, was five cents per bushel.

3. That the quantity of corn which the defendant ought to have delivered according to his contract, and failed to deliver, was 20,430 bushels.

4. That plaintiff had sustained damages by defendant's breach of his contract to the amount of $1,021.50, which included interest from the 20th of September, 1872, to the time of the trial.

Before considering the questions which are made on the merits of the case, it will be convenient to dispose of some which are collateral: The defendant asked the Judge to submit an additional issue,—" was getting payment of the judgment the defendant's *sole* inducement for making the alleged contract?"—and the Judge refused to do so. We think the Judge was clearly right. What was the inducement or motive of the defendant to making the contract, as distinct from the consideration, was immaterial; and evidently the getting his corn ground on the terms proposed, was the consideration of his contract, and at least a part of his inducement to make it. The submission of such a question to the jury would only have embarrassed them.

The defendant prayed the Court to instruct the jury, " that the profits which plaintiff would have made if the contract alleged in the complaint had been fully carried

out, are not the proper measure of damages; that plaintiff is only entitled to actual damages, and having offered no proof of any such, is entitled to only nominal damages." The Judge refused, and although some part of the prayer was correct, (as will be seen,) yet as a whole it was erroneous, and the Judge was justified in refusing it.

The defendant also prayed the Court to instruct the jury that the contract was *nudum pactum,* or at least, that it was so if eight cents per bushel was a fair price for grinding. The Judge declined to do so, and in our opinion rightly. There was a consideration for the defendant's contract, to wit, the agreement of plaintiff to do the work; and it was not the less a consideration because it was to be done at a fair price.

The charge of the Judge as to the compromise and release of the plaintiff's claim seems to have been fair and correct. [The issue in respect to this was,—" were the causes of action alleged in the complaint compromised and settled between the parties upon sufficient consideration? Answer.—No."  And the instruction on it was,—"that the jury must say whether the plaintiff agreed with defendant's attorney to surrender his right of action for the alleged breach of contract, and if plaintiff did so agree in consideration of receiving the forbearance on the execution, as testified to, then this was a sufficient consideration binding on plaintiff and the jury must find the issue in the affirmative; that a contract is the assent of two minds to the same thing in the same sense, and that they must consider all the testimony on this point and say whether the plaintiff did agree to compromise as alleged; that the plaintiff was not barred from recovering in this action by reason of his agreement in regard to any matter other than the cause of action which he now sues on, and if in the conversation with said attorney, the plaintiff did not understand him as referring to the cause of action sued on, then the

jury must find the issue in the negative."] If two parties in bargaining do actually misunderstand each other, if their language is equivocal, and one is meaning to speak of one subject, and the other of another, it is clear that there is no contract; for there is not that *aggregatio mentium* necessary to make one. If the words are clear and unequivocal, neither party can say that he understood them in a different sense from what they plainly bear; and if either party knows that the other understands him as speaking of one object, or with one meaning, he will not be allowed to say that he had in his mind another object, or intended a different meaning. But the question as to whether the plaintiff did agree to release the claim sued on or not, was fairly left to the jury and decided by them in the negative.

These observations meet all the questions which appear to have been raised upon the trial, or which appear from the written argument of the defendant's counsel filed in this Court, to have been presented here. It is agreed, I believe, by all the members of the Court that on all these questions the position of the defendant is untenable, and that the Judge committed no error in his rulings on them.

We can proceed now to consider such objections to the judgment in favor of the plaintiff as bear on the merits of the case: The Judge told the jury that the measure of damages was the difference between the cost of grinding, and the contract price; and the jury, as has been seen, found this difference to be five cents per bushel. We think it is now well established that the profits which a plaintiff would have made if the contract had been complied with is the measure of damages for its breach, in cases like the present. There are of course cases not within the rule, as where the profits are speculative and incapable of accurate ascertainment, or, so remote that they can not be supposed to have been within the contemplation of the parties, or, where they depended on facts of which the defendant had

no notice, and which therefore could not have been in their contemplation.

Where a defendant had covenanted to teach a slave a trade, and failed to do so, the owner was held entitled to recover the sum which would have been added to his value, if he had been taught. *Bell* v. *Walker*, 5 Jones, 43. In *Spiers* v. *Halsted*, 74 N. C., 620, the damages were held to be the profit which the plaintiff would have made upon selling the goods, if they had arrived in due time. To a like effect are *Mace* v. *Ramsey*, 74 N. C., 11, and *Clements* v. *The State*, 77 N. C., 142.

It is suggested, however, that the instructions of the Judge as to the measure of damages, though correct as far as they went, were erroneous, in this, they ought to have stated that the actual loss sustained by defendant's breach of contract was the true measure of damages, and if the plaintiff after defendant's refusal to deliver corn to be ground under the contract, did receive from other persons employment more or less lucrative, for such part of his machinery as would have been occupied in performing his contract with the defendant, or by reasonable effort on his part might have received such employment, the profit that was, or might have been thus made, must be deducted from the profit he would have made, had defendant performed his contract, in order to ascertain the actual damage. We think the instructions given would not have been erroneous with this or some equivalent addition, and that they would have been positively erroneous without it, if there had been anything in the evidence to which such a doctrine was applicable.

In the law of master and servant the doctrine is established both on reason and authority, that if a servant be wrongfully discharged by his master during the time of service contracted for, he *may* treat the special contract as rescinded by the discharge, and sue immediately, in which

case he would recover as upon a *quantum meruit* for the service rendered before the discharge, if he had not received payment for that; and also, damages for the breach of contract in discharging him, though it seems that the rule by which this last damage is to be ascertained is not well settled, (*Brinkley* v. *Swicegood*, 65 N. C., 626; 31 Barb., N. Y., 381; Hilt., N. Y., 300,) or, he may wait until the end of the term and recover the full price agreed to be paid for the term, subject to be diminished on proof by the master, that the servant did receive or might have received employment elsewhere. *Hendrickson* v. *Anderson*, 5 Jones 246. This doctrine would be applicable in this case if there were facts to make it so. The contract of plaintiff to grind a certain quantity of corn for defendant, although it did not create strictly the relation of master and servant, yet did create an analogous one; and if it had appeared that plaintiff's mill had, after defendant's refusal to send corn, in fact received, or but for plaintiff's refusal would have received a quantity of custom sufficient to disable him in whole or in part from performing his contract with defendant, such a fact ought to have gone in diminution of plaintiff's damages; and the Judge ought, if requested by defendant, so to have told the jury. But he was not so requested; no such point in defence was made in the Court below or by counsel in this Court. It deserves consideration, whether it will promote the attainment of justice in a case, to allow apparent defects in the evidence of a particular fact in the case of a party successful below, to be first pointed out and excepted to in this Court by an appellant. The case is made out by the appellant subject to the revision of the Judge, upon objection by the appellee; but it is a substitute for, and is in the nature of, a bill of exceptions upon a writ of error. Such a proceeding is regarded as a new suit in which the judgment below is taken to be right, unless the plaintiff in error shows affirmatively some error

therein, and that exception was taken on the trial to the proceeding or ruling alleged to be erroneous. The defendant in error is in no case required to show affirmatively and upon the bill of exceptions, or case, that he was entitled to the judgment in his favor obtained below. His position is strictly defensive. The judgment below is assumed to be right until some specified error is shown. Still less is the appellee bound to show that he had a good case "to a certain intent in every particular," so as to exclude every supposition to the contrary, as in effect he will be held to do, if the appellate Court takes up the case or bill of exceptions to examine if the appellee's claim or defence is supported in all respects by full proof. It is the rule of all Courts of appeal, and this Court has repeatedly said, that no more of the evidence or facts should be inserted in a case than is necessary to explain the exceptions of the appellant.

*Hence*, in this case it would be contrary to established practice to require the plaintiff to show from the case made out by the appellant that his claim was supported by evidence that his mill had not been so employed as to diminish his damages. It may be that the evidence to that effect was ample, but was omitted from the case as superfluous, because the want of such evidence was not excepted to. We think, however, that it does appear in the case that the plaintiff in fact proved all that was incumbent on him in this respect. The case states as a fact not apparently disputed "that plaintiff was ready, *able*, and willing to grind the whole amount of corn necessary to pay the judgment at the contract price." When the plaintiff proved a contract, its breach, and the loss of a certain profit resulting from the breach, upon all the authorities the burden lay on the defendant to prove any thing in diminution of the damages.

In *Hendrickson* v. *Anderson, supra*, it was held that an

overseer employed for a year and prematurely discharged, could recover the full stipulated wages, unless the defendant showed misconduct, &c., in diminution of damages. BATTLE, J. says: "But in a suit for the stipulated compensation, the defendant may show in diminution of damages, that after the plaintiff had been dismissed, he had engaged in other lucrative business. *This, however, must be proved by the defendant, and must not be presumed.*" The case of *Cortigan* v. *R. R. Co.,* 2 Denio 609, is cited and fully sustains the position that the burden is on the defendant: The Court say,—"but first of all the defence set up should be proved by the one who sets it up. * * * The rule requires him to prove an affirmative fact; whereas the opposite rule would call upon the plaintiff to prove a negative * * *. He is the wrong doer, and presumptions between him and the person wronged should be made in favor of the latter. For this reason, therefore, the *onus* must in all such cases be upon the defendant." To the same effect are *Walworth* v. *Pool,* 9 Ark. 394; *King* v. *Steiren,* 44 Penn., St. 99; and *Jones* v. *Jones,* 2 Swan (Tenn.) 605.

In the present case the defendant introduced no evidence of the sort spoken of, and there was therefore nothing in the evidence to call for or justify the addition or qualification to the Judge's instructions, which has been suggested as proper, even if such addition or qualification had been asked for. The judgment below is affirmed.

SMITH, C. J., *Dissenting.* The plaintiff and defendant, on April 29th, 1871, entered into an agreement for grinding corn at the plaintiff's mill, at the price of 8 cents per bushel, and that 50 lbs. of meal be returned for 56 lbs. of corn. The terms of the contract were controverted before the jury, but they found that the defendant bound himself to send to the mill a quantity of corn, sufficient for the toll to pay off and discharge a judgment, which he held against the plaintiff, and that it should be thus applied. Between

the 1st day of May and September following, 5791 8-56 bushels of corn were delivered and ground, when the defendant denied his obligation, and refused to send any more corn to the mill. Conflicting evidence was offered as to what was a fair charge for grinding, when 50 lbs. of meal were to be returned for 56 lbs. of corn, the plaintiff's witnesses estimating it at fifteen, and some as high as twenty cents a bushel, while those of defendant estimated it at eight cents, the contract price.

There was no evidence, that plaintiff's mills were stopped or delayed, in consequence of the defendant's refusal to send the additional quantity, for which he contracted; or that the withdrawal of his patronage was not supplied with a full equivalent, from other sources; or that the mills were not taxed to their working capacity, after the breach. It was shown that the expense of grinding to the plaintiff was three cents a bushel. The sum due for the corn ground was credited on the defendant's judgment, and the plaintiff compelled to pay the residue. The plaintiff was prepared and ready to do the work, if the corn had been delivered. The second issue submitted to the jury was to this effect:

What is the difference between the contract price and the actual cost to the plaintiff of grinding the quantity of corn necessary to pay off the judgment, and what additional quantity was required to raise that sum? The jury responded that the difference was five cents a bushel, and the additional corn needed, 20,430 bushels.

The defendant asked the Court to charge the jury that the profits which the plaintiff would have made, if the contract alleged in the complaint had been fully carried out, were not the proper measure of damages, and that the plaintiff is only entitled to actual damages, and having offered no proof of any such, is only entitled to nominal damages. The Court refused to give the charge, and instructed the jury that the measure of damages was the difference

between the cost of grinding and the contract price. To this the defendant excepts. The jury awarded the plaintiff damages at the rate of five cents per bushel.

In this ruling of the Court I do not concur. For the violation of the contract, the plaintiff was entitled to recover those damages, which fairly flowed from the breach, and no more. Had the mill been stopped, or so interrupted in its operation as to have lost as much time as would be required to do the additional grinding, and that after reasonable efforts to prevent the loss, the plaintiff could have claimed the full sum awarded him under the instruction of the Court. But he should have shown the extent of his losses in this respect. He had no right quietly to close up his mill, or permit it to lie idle for a period necessary to do the defendant's grinding, and then charge him as for a total loss. It was his duty to make reasonable efforts to prevent those losses, by seeking patronage elsewhere. If the losses were fully, or partially replaced by the employment of others, the defendant was entitled to an equivalent reduction on the full claim now made against him. This rule, just and reasonable in itself, which fully indemnifies against all losses sustained for a broken contract, is abundantly supported by authority.

The general principle is this lucidly stated by Mr. Greenleaf: "In cases of special contract, where one party agrees to do a certain thing, or to perform specific services for a stipulated sum of money, as for example, to perform a piece of mechanical work for an agreed price, or to occupy a tenement for a certain time, at a specified rent, and deserts the undertaking before it is completed, or is turned away and forbidden to proceed by the other party, the measure of damages is not the entire contract price, but a *just recompense for the actual injury*, which the party has sustained. And in all cases of breach of such specific contracts, it is to be observed that if the party injured can protect himself

from damages at a trifling expense, *or by any reasonable exer-tions, he is bound to do so.* He can charge the delinquent par-ty only for such damages, as by reasonable endeavors and expense, he could not prevent." 2 Greenl. Ev., § 261.

So an eminent writer on the law of damages says: In actions for breach of contract, the measure of damages is not the price stipulated to be paid in full performance, but the actual injury sustained in consequence of the defendant's default. For the rule that the contract furnishes the meas-ure of damages, is subject to the other rule, already stated, that compensation is only to be given for actual loss. Sedg. Damages, 210. To same effect Mayne on Damages ; 82 Law Lib., 113.

There is some conflict in the cases in regard to the dama-ges to which one wrongfully dismissed, during his contract-ed term of service, is entitled, but the better opinion seems now to bring these cases under the rule, applicable to other special contracts.

In *Elderton* v. *Emmens*, 60 E. C. L. R., 117, an attorney, who had contracted to render professsional service during the year at the sum of an hundred pounds, was dismissed before it expired, and brought his action. PARKE, J., deliv-ering the opinion of the Court, thus expresses himself: " If it be held that such a contract as this is for service and pay respectively, and that although the employer has determin-ed the relation by an illegal dismissal, the employed may entitle himself to the wages for the whole time by being ready to serve, a doctrine would be sanctioned that would be of pernicious consequence, as in the case of a business being discontinued, or a dismissal for misconduct, without legal proof."

In *Goodman* v. *Pocock*, 69 E. C. L. R., 583, a clerk who was dismissed in the middle of his quarter sued his em-ployer for his wrongful act, and EARLE, J., says : " I think the true measure of damages is the loss sustained at the

time of dismissal.  The servant, after dismissal, may and *ought* to make the best of his time, and he may have an opportunity of turning it to advantage."

Commenting on these cases, and referring to what had been said by others that a dismissed servant could recover for the whole time upon the doctrine of constructive service, Mr. Mayne uses this language: That doctrine, however, after being severely commented on in *Smith* v. *Haywood*, seems to have been tacitly overruled by the Exchequer Chamber in *Elderton* v. *Emmens*, and expressly by PATTERSON and EARLE, JJ., in *Goodman* v. *Pocock*. Mayne on Damages, 113.

The rule in this country seems to have been similarly settled :

In *Shannon* v. *Comstock*, 21 Wend. (N. Y.) 457, the contract was to transport horses on a canal boat for a given sum of money, and the action was brought to recover damages for the breach.  The Court say : " Suppose that the plaintiff had the next hour been furnished with freight entirely adequate to the voyage at the same sum, he would have been entitled to the damage arising from the detention for that time, but no more.  A tender and offer to perform is *quasi* performance, but it does not regulate the amount of damages.

By way of illustration COWEN, J., proceeds thus : " A mason is engaged to work for a month and tenders himself and offers to perform, but his hirer declines his service.  The next day this mason is employed at equal wages elsewhere for a month.  Clearly his loss is but a day and it is his *duty to seek other employment.*  Idleness is itself a breach of moral obligation.  But if he continues idle for the purpose of charging another, he superadds a fraud which the law had rather punish than countenance."

In this case, and also in the subsequent case of *Hecksher* v. *McLean*, 24 Wend., the words of Chief Justice MELLEN, of

the Supreme Court of Maine, used in *Miller* v. *Mariners Church*, 3 Greenleaf 51, 55, 56, are quoted with strong approval: " If the party, entitled to the benefit of the contract, can protect himself from a loss, arising from a breach, at a reasonable expense, or with reasonable exertions, he fails in his social duty if he omits to do so, regardless of the increased amount of damages, for which he may intend to hold the other contracting party liable."

So too in Kentucky, it was held that a party contracting to work at a stipulated price who is ready and willing to perform his agreement, but is prevented by the defendant, can not recover the price named in the contract for the whole work, but only the actual damages sustained by him. *Chamberlain* v. *McAllister*, 6 Dana 352.

These cases, some of which are almost identical with that before us, clearly, and as I think, conclusively show that the rule, laid down by the Judge, and by which the jury assessed the damages, is entirely erroneous. The damages were to be ascertained by evidence of interruptions of the mill and loss of time, and not by the profits which a fulfilled contract would have brought. It may be that the mill had full employment, and if so, at more remunerative price, and that no loss whatever resulted from the defendant's act. How this was, it was in the power of the plaintiff, and in my opinion, his duty to show to the jury. He was required to prove the extent of his damages, and such damages as he could not by reasonable efforts avert. The rule finds illustration in a familiar case of trespass. The defendant pulls down the plaintiff's fence around his cultivated field for the purpose of passing through, and neglects to put it up. In consequence, stock enter the field and depredate upon the crops. As soon as the plaintiff is advised of this, it becomes his duty to replace the fence, and his claim to compensation for injury suffered is the cost of repairs, and the value of the injury to the crop before he had notice

and time to replace the fence.   He could not remain passive, after knowledge, and permit his entire crop to be destroyed, and then demand compensation for its value.   It was his duty to make prompt and reasonable efforts to prevent unnecesary damage, and if he will not, he has no just ground of complaint against the wrong-doer.

Suppose the plaintiff had brought his action at once upon the defendant's repudiation of the contract, the damages, it would seem, must be estimated upon the same principle, as when he waits a year or more before doing it.   In such case the estimate must be purely speculative and conjectural, and the anticipated profits certainly could not be recovered.   There are many contingencies attendant upon all business—the possible loss by fire, the breaking of machinery, death, sickness, and other causes may interrupt, or suspend its prosecution. . These can not be estimated in advance, and profits must be largely dependent upon them. It is for this reason that the actual, not conjectural loss, constitutes the plaintiff's claim to compensation.

The case of *Clements* v. *The State*, 77 N. C. 142, seems to conflict with the doctrine enunciated.   There, the plaintiff was permitted to recover as damages, in the Court below, the profits which he would have made if he had been permitted to execute his contract, and which he lost by the default of the State, and this ruling was sustained on the appeal.   The opinion delivered here, simply declares that there is no error, and the subject does not seem to have been fully and carefully considered.   Recognizing the importance of adhering to the decisions of this Court, to give stability and firmness to our system of jurisprudence, yet a principle so eminently practical, and so far reaching in its results, should not be permanently settled without ample and thorough examination of all its bearings, and I have felt myself at liberty to treat it as an open question still.

I am constrained therefore to dissent from the opinion of the Court and to say that I think there was error in the charge entitling the defendant to a new trial.

No error.

PER CURIAM.                                    Judgment affirmed.